# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH P. MOFFITT,              :

            **Plaintiff**          :      **CIVIL ACTION NO. 3:13-1519**

          **v.**             :      **(JUDGE MANNION)**

**TUNKHANNOCK AREA SCHOOL**  :
**DISTRICT and the TUNKHANNOCK**
**AREA SCHOOL DISTRICT BOARD** :
**OF SCHOOL DIRECTORS,**

                  :

          **Defendants**

                  :

## MEMORANDUM

Presently before the court is the defendant's motion to dismiss the plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 8).

## I.    BACKGROUND

This case arose when the defendants, Tunkhannock Area School District and the Tunkhannock Area School District Board of School Directors (the school board), temporarily suspended the plaintiff, Joseph P. Moffitt, from his job as principal of two area schools. (Doc. No. 1). The plaintiff has been employed as both a principal and vice-principal of various schools over the past seven years. (Id., ¶3). During his time as principal, he raised concerns

about mold in one of the schools. (Id, ¶47). The complaint does not specify when, how, or to whom these concerns were raised. The plaintiff also encouraged people who were concerned about the direction of the school district to run for positions on the school board. (Id., ¶60). The plaintiff allegedly opposed the election of one member of the school board in the past. That school board member later made allegedly false statements about the plaintiff, resulting in him receiving a three day suspension. (Id., ¶61). This same member was on the school board through 2012. (Id., ¶61-62).

On the morning of June 7, 2012, the plaintiff learned he had a 2:30 PM meeting with the Tunkhannock Area School District Superintendent. (Id., ¶8). The plaintiff was not made aware of the purpose of this meeting. (Id.). In attendance at the meeting were the plaintiff, the superintendent, the assistant superintendent, and an attorney. (Id., ¶9). The school's attorney questioned the plaintiff for approximately 2.5 hours, but did not tell the plaintiff the purpose of the meeting. (Id.). The plaintiff asked for his attorney three times, but was told he did not have the right to an attorney. (Id.). When the questioning concluded, the plaintiff was suspended for one day and was told to meet with the superintendent on June 8, at 10:30 AM. (Id., ¶12).

The next day, the superintendent told the plaintiff he was suspended

2

indefinitely without pay. (Id., ¶14). The superintendent also informed the teachers at two schools that the plaintiff would not be returning to his position. (Id., ¶13). On June 14, 2012, the plaintiff received a letter from the superintendent notifying him in writing that effective June 8, 2012, he was suspended without pay until the school board could hold a formal termination hearing. (Id., ¶15). The letter did not include a list of witnesses, evidence, or reasons for the suspension. (Id., Att. 1). The plaintiff was not permitted on school property or allowed to attend any school sporting events during his suspension. (Id., ¶16).

On July 25, 2012, the president of the school board sent the plaintiff a letter detailing the allegations against him and notifying him that the school administration recommended dismissal. (Id., Att. 2). The letter included six charges as the basis for the suspension, two of which were withdrawn prior to his formal termination hearing. (Id.). The four surviving charges related to the plaintiff's administration of the "4Sight Benchmarks" examination given in the Tunkhannock Area schools. (Id., ¶19). The hearing was initially scheduled for August 6, 2012, but was rescheduled until September 19, 2012. (Id., ¶20). It is unclear from the complaint and attached exhibits why the hearing was rescheduled. The letter also informed the plaintiff the hearing would be open

to the public unless the plaintiff or counsel requested a private hearing. (Id., Att. 3). The plaintiff could also seek a continuance of the hearing if necessary. (Id.).

On August 29, 2012, the school board met and, when asked by a member of the public about the plaintiff's job, the superintendent said he would let the school board members know how he planned on filling the position. (Id., Att. 3). On September 19, 2012, just prior to the termination hearing, the plaintiff became aware of the evidence that would be presented at the hearing. (Id., ¶19). The plaintiff also learned that the June 7, 2012, meeting was purported to be his *Laudermill* hearing. (Id., ¶20). The termination hearing occurred on September 19, October 24, and November 8, 2012, and was open to the public. (Id., ¶22). On November 16, 2012, the school board rendered its decision, rejecting the school administration's recommendation of dismissal and suspending the plaintiff, without pay, until the beginning of the next grading period. (Id., Att. 4). This suit followed.

## II.    PROCEDURAL HISTORY

This case was commenced on June 6, 2013, when the plaintiff filed his complaint. (Doc. No. 1). The complaint alleges eight causes of action: Counts

I and II are brought pursuant to 42 U.S.C. §1983 for violations of due process rights under the Fourth, Fifth, and Sixth Amendments, Count III is for First Amendment retaliation, Count IV for violation of the plaintiff's Fourteenth Amendment right to privacy, Count V for violation of First Amendment associational rights, Count VI for breach of contract, Count VII for wrongful suspension in violation of public policy, and Count VIII for intentional and/or negligent infliction of emotional distress. (Id.). The plaintiff seeks both compensatory and punitive damages. (Id.). The defendants filed a motion to dismiss the complaint on August 19, 2013, (Doc. No. 8), and a brief in support on September 3, 2013. (Doc. No. 12). The plaintiff filed a brief in opposition on September 16, 2013. (Doc. No. 15). The motion is now ripe for the court's decision.

## III. STANDARD OF REVIEW

The defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and

dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in _Conley v. Gibson_, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." _Twombly_, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [necessary elements]" of the plaintiff's cause of action. _Id._ Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." _Phillips v. County of Allegheny_, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting _Twombly_, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. _Sands v. McCormick_, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit

6

to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).


## IV.  DISCUSSION

The motion to dismiss touches on all claims, but the defendants' brief

in support addresses Counts I-IV and VI-VIII. (Doc. No. 12). Count V relates to a "violation of associational rights" stemming from a School Board member who was allegedly biased against the plaintiff. (Doc. No. 1). The plaintiff cites the First, Ninth, and Fourteenth Amendment in support for his 42 U.S.C. §1983 claim. The Ninth Amendment does not independently establish any constitutional right for the purpose of pursuing a civil rights action. *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *Davis v. New Jersey Department of Corrections*, 2011 WL 5526081, *4 (D.NJ. Nov. 14, 2011). "[A] *sua sponte* dismissal may stand . . . where it is clear that the plaintiff cannot prevail and that any amendment would be futile." *Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007). Since the defendants have not briefed any reason for dismissal of the First and Fourteenth Amendment claims in Count V, they shall remain. However, any claim arising under the Ninth Amendment is **DISMISSED** with prejudice.

The Due Process Claims

The defendant first argues that the plaintiff has failed to exhaust available administrative remedies to contest his suspension, barring any due process claims. (Doc. No. 12). "The Supreme Court has consistently noted that exhaustion of state remedies, whether judicial or administrative, is not

required prior to the commencement of an action under 42 U.S.C. §1983 in federal court." _Hochman v. Board of Ed. Of City of Newark_, 524 F.2d 1094, 1096 (3d Cir. 1976). In this case, the plaintiff need not exhaust his administrative remedies before filing suit. As such, that part of the motion to dismiss is **DENIED**.

The defendant next argues that the plaintiff's Fifth, Sixth, and Fourteenth Amendment due process claims are insufficient as a matter of law. (Doc. No. 12). As a preliminary matter, the court acknowledges that "Sixth Amendment guarantees . . . are applicable only in the context of criminal prosecutions." _Lahaza v. Azeff_, 790 F.Supp. 88, 93 (E.D.Pa. 1992). This case does not involve a criminal prosecution, but rather a termination hearing held by a local school board. Any claims arising under the Sixth Amendment are **DISMISSED** with prejudice.

The plaintiff also cites violations of his Fifth Amendment rights in Counts I and II. (Doc. No. 1). "The Fifth Amendment of the United States Constitution protects an individual from deprivation of his property rights by a _federal actor_, without due process of law. To the extent that Plaintiff has pled a due process claim under the Fifth Amendment, such claims fail, as all Defendants here are state actors." _Cunningham v. North Versailles Tp._, 2010 WL 391380, *8

(W.D.Pa. January 27, 2010)(citations omitted)(emphasis in original). The plaintiff makes no allegations against any federal actor. Therefore, any claims arising from an alleged violation of the plaintiff's Fifth Amendment right are **DISMISSED** with prejudice.

Finally, the court will address the alleged violation of the plaintiff's procedural due process rights under the Fourteenth Amendment. (Doc. No. 1). Although it is unclear as to whether the defendants argue that the plaintiff does not have a property interest in his employment, in the interest of thoroughness, the court will address that issue first.

"Well-established federal law recognizes the existence of a property interest in public employment where state law supports a claim of entitlement to continued employment." *King v. School Dist. of Philadelphia*, 2001 WL 856948, *7 (E.D.Pa. July 26, 2001)(citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)). When state law restricts the termination of a public employee except for cause, an entitlement to continued employment is created and a protected property interest vests. *Id.* (citing *Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997)). The plaintiff alleges that he had an employment contract with the defendants and that the reasons for his suspension do not fall within those enumerated in 24 P.S. §11-1122, the statute governing the

10

termination of contracted professional employees in Pennsylvania public schools. The defendants further note that in order to be terminated, they would need to determine whether the allegations, if proven, "constitute cause for termination under the terms of Section 1122 of the Public School Code of 1949." (Doc. No. 1, Att. 2). As the plaintiff could not be terminated without cause, he had a property interest in his continued employment and was entitled to procedural due process prior to termination. *See Bradley*, 913 F.2d at 1078 (noting that statute listing causes for termination of tenured teachers established property interest in "continued employment").

However, it is unclear "whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination." *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). Although the Supreme Court has not decided the issue, Pennsylvania Courts have held that suspended employees have a property interest when a contract for employment can only be terminated for specifically numerated reasons. *See Andersky v. West Allegheny School Dist.*, 437 A.2d 1075, 1077 (Pa. Comm. Ct.1981)(holding that seven professional employees suspended by school board had "a legitimate claim to continued employment secured by state statute"); *see also McFerren v. Ferrell Area School Dist.*, 993 A.2d 344, 353 (Pa. Comm. Ct.

11

2010)("[T]he grounds for dismissal listed in [24 P.S. §11-1122] must be strictly construed in favor of the professional employee and against the school district.").

Moreover, when a suspension includes an "intent to dismiss," due process protections are triggered because "the suspension [is] the functional equivalent of permanent discharge subject to a condition subsequent." *Gniotek v. City of Philadelphia*, 808 F.2d 241, 243-44 (3d Cir. 1986). "Suspension with intent to terminate is a *de facto* termination, and as such, the deprivation occurs on the date the public employee was suspended." *Belas v. Juniata County School Dist.*, 2005 WL 2100666, *6 (M.D.Pa. August 26, 2005). In this case, the school administration recommended termination, (Doc. No. 1, Att. 2), so the suspension was essentially made with the intent to dismiss. Given the intent to terminate is *de facto* termination pending the school board's action, the plaintiff was "entitled to whatever pretermination procedures the Constitution mandates prior to actual dismissal." *Gniotek*, 808 F.2d 241, 244.

The defendant contends that because the plaintiff was given a hearing pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), (a *Laudermill* hearing), the plaintiff received sufficient due process. *Laudermill*

12

requires that "an employee who has a property interest in continued employment is entitled to pretermination notice and an opportunity to respond to present reasons why proposed action should not be taken." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1077 (3d Cir. 1990). In conjunction with *Laudermill*, the court must determine whether the plaintiff had sufficient notice and an opportunity to respond during the initial hearing on June 7, 2012. 470 U.S. at 546.

The plaintiff was notified about the hearing on the same day it was to occur, June 7, 2012. (Doc. No. 1, ¶8). The complaint alleges that the plaintiff did not learn about the specific purpose of the hearing until September 19, 2012, three months after it had occurred. (Id., ¶20). Moreover, the plaintiff alleges the hearing was nothing more than an attorney asking him a series of questions and then subsequently being told that he was suspended for one day. (Id., ¶9). Given these averments, discovery is necessary to determine whether the defendants provided the plaintiff "with notice and explanation of the charges and an opportunity to respond" at the *Laudermill* hearing. *McDaniels v. Flick*, 59 F.3d 446, 456 (3d Cir. 1995). The motion to dismiss the claim as related to the suspension that occurred between June 8 and the rendering of the school board's decision is **DENIED**.

13

Next, the court must determine whether the subsequent three-day hearing was sufficient to satisfy due process concerns. In *Biliski v. Red Clay Consol. Sch. Dist. Bd. Of Educ.*, 574 F.3d 214 (3d Cir. 2009), the Third Circuit determined that sufficient post-termination safeguards satisfied due process concerns. There, the plaintiff received five disciplinary memos over a period of six months detailing his poor work performance, was given the charges that were the basis of the termination hearing eight days prior to the hearing, was allowed to submit responses to the charges against him, and was given a hearing in front of an unbiased board. *Id.* at 222-23. In our case, at this stage of the litigation the complaint demonstrates the plaintiff knew generally of the charges against from a letter sent approximately two months prior to the start of the hearings but only learned of the evidence against him immediately prior to the hearing. (Doc. No. 1, ¶19-20). Unlike in *Biliski*, the plaintiff did not have detailed written reports or multiple meetings prior to the termination hearing. Further, he was not notified of the evidence against him until just before the hearing. In sum, discovery is necessary to determine what due process was actually afforded the plaintiff. Therefore, the motion to dismiss Count I as related to the violation of the plaintiff's Fourteenth Amendment procedural due process rights is **DENIED**.

Count II further claims a violation of the plaintiff's Fourteenth Amendment procedural due process rights stemming from the termination hearing in front of the school board. (Doc. No. 1). Specifically, he alleges that the school administration purposefully misrepresented 24 P.S. §11-1122 to the school board, leading to his continued suspension. (Id., ¶42-43). As previously discussed, the plaintiff again claims violations of his Fifth and Sixth Amendment rights in Count II. For the reasons noted previously, any claim arising from the Fifth or Sixth Amendment in Count II is **DISMISSED** with prejudice.

Turning to the surviving Fourteenth Amendment claim, the central issue is whether the modified language of 24 P.S. §11-1122 raised "the risk of erroneous termination." *Biliski*, 574 F.3d at 221 (quoting *Laudermill*, 470 U.S. at 543)). However, "[t]he ultimate decision-maker here was the [School] Board, not the [Tunkhannock] administrators who recommended [the plaintiff's] termination." *Biliski*, 574 F.3d at 222. The issue is what effect, if any, the allegedly modified language had on the School Board's decision to suspend the plaintiff. Discovery is necessary to determine what evidence supported the School Board's decision to suspend the plaintiff and what impact the modified language of 24 P.S. §11-1122 had on that decision. This

will illuminate how the language may have affected the plaintiff's due process right to respond effectively to the charges against him. Therefore, the motion to dismiss the Fourteenth Amendment claim contained in Count II is **DENIED**.

The First Amendment Claim

The defendants next argue that the plaintiff's First Amendment claim is insufficient as a matter of law. (Doc. No. 12). "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). "To establish a claim for First Amendment retaliation, a plaintiff must demonstrate that he: '(1) engaged in constitutionally protected speech; (2) was subjected to adverse action or deprived of some benefit; and (3) his protected speech was a `substantial' or `motivating factor' in the adverse action.'" Infantino v. West Wyoming Borough, 2013 WL 3972770, *3 (M.D.Pa. July 31, 2013)(quoting Billman v. Corbett, 2011 WL 605814 (E.D.Pa. Feb. 15, 2011). The plaintiff's factual allegations in support of his First Amendment claim merely note that the plaintiff "raised questions concerning the life-threatening mold at one of the schools of which he was the principal." (Doc. No. 1, ¶47). The plaintiff then avers that as a result of his speech, the defendants took "actions averse" to the plaintiff. (Id., ¶48).

16

It is unclear from this allegation when the statements were made, to whom the statements were made, and whether the defendants even became aware of the statements. To show causation, the plaintiff must set forth facts that show that the defendants (1) knew of his protected speech activity and, (2) that this knowledge was causally related to his termination. _Galli v. New Jersey Meadowlands Comm'n_, 490 F.3d 265, 275 (3d Cir. 2007). There is nothing to demonstrate the defendants' knowledge or even temporal proximity to show some level of causation, save the plaintiff's generic elemental recitation of this cause of action. As such, Count III, the plaintiff's First Amendment claim, is **DISMISSED** without prejudice.

The Violation of Privacy Claim

The defendant contends that the plaintiff's privacy claim fails because the details revealed in the hearing were not intimate in nature and the plaintiff had the right to make the hearings private. (Doc. No. 8). The plaintiff contends that he has set forth sufficient facts to sustain the claim at this juncture without pointing to any factual allegations in support of his argument. (Doc. No. 12).

"It is well established that the constitutional right to privacy protects two types of privacy interests: 'One is the individual interest in avoiding disclosure

of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)(quoting *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). The parties agree that it is the first privacy interest, or "the right not to have intimate facts concerning one's life disclosed without one's consent," that is at issue here. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 170 (3d Cir. 2005)(quoting *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999)).

The plaintiff fails to make any allegations regarding any personal or private details that were revealed during the proceedings in front of the School Board or released by the School District. (Doc. No. 12). In fact, the plaintiff could have made the proceeding private, as noted in the defendants' letter of July 23, 2012. (Doc. No. 1, Att. 2). The plaintiff has failed to allege sufficient facts to demonstrate that any personal or intimate details were released in violation of his right to privacy. As such, Count IV, the plaintiff's violation of privacy claim, is **DISMISSED** with prejudice.

The Breach of Contract Claim

The defendants argue that the plaintiff was an at-will employee at the time of his termination and that his employment was not governed by a contract. (Doc. No. 12). There is nothing in the complaint or attached exhibits

to suggest that the plaintiff was an at-will employee. That argument is not supported by the record before the court.

"To sustain a breach of contract claim under Pennsylvania law, a plaintiff must prove: (1) the existence of a contract; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Wagner v. Tuscarora School Dist.*, 2006 WL 167731, *13 (M.D.Pa. Jan. 20, 2006)(citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002)). The letter of July 23, 2012, specifically notes that the plaintiff could be terminated under the terms of 24 P.S. §11-1122, a statute that governs causes for termination of a contract. (Doc. No. 1, Att. 2). The plaintiff claims he had a contract with the defendants to act as a principal in the school district and was in compliance with that contract. (Id., ¶6-7). He was paid a salary in exchange for his services and was subsequently suspended without pay for a period of time. (Id., ¶14, Att. 5). He further alleges he was suspended for reasons not listed in the relevant statute. (Id., ¶23). These allegations are sufficient to sustain a cause of action for breach of contract. The motion to dismiss Count VI is **DENIED**.

The Wrongful Suspension in Violation of Public Policy Claim

The plaintiff further alleges that his suspension was in violation of public

19

policy, (Doc. No. 1), and argues that the factual averments in the complaint are sufficient to sustain the claim at this juncture. (Doc. No. 15). The defendant argues that this claim fails given that the plaintiff had a three-day hearing in front of the School Board where he was represented by counsel, made aware of the evidence against him, and had an opportunity to present evidence. (Doc No. 12).

"The public policy exception is limited to terminations of employment that have violated significant and recognized public policies." *Yetter v. Ward Trucking Corp.*, 585 A.2d 1022, 1026 (Pa. Super. 1991). "The Plaintiff in some way must allege that some public policy of this Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee." *McLaughlin v. Gastrointestinal Specialities, Inc.*, 750 A.2d 283, 289 (Pa. 2000). When, an "employer fires the employee in direct contravention of a specific statutory prohibition," such a public policy concern is implicated. *McLaughlin v. Gastrointestinal Specialties, Inc.*, 696 A.2d 173, 177 (Pa. Super. 1997).

The plaintiff alleges that he was suspended without cause, in violation of 24 P.S. §11-1122. As there is a statute regulating under what circumstances a contracted school employee can be terminated, it would

20

violate established public policy to allow a school board to suspend or terminate a contract employee without cause. The plaintiff also notes that the evidence presented against him was insufficient to meet any of the statutory requirements and that the language utilized by the School Board did not match the statute. (Doc. No. 1, ¶23). As such, the defendants' motion to dismiss Count VII, the plaintiff's wrongful suspension in violation of public policy claim, is **DENIED**.

Intentional/Negligent Infliction of Emotional Distress

The defendants next claim the Political Subdivision Tort Claims Act (PSTCA), 42 Pa.C.S.A. § 8542(b), precludes claims for both negligent (NIED) and intentional infliction of emotional distress (IIED). (Doc. No. 12). Moreover, the defendant argues that the behavior is insufficiently extreme or outrageous as alleged in the complaint. (Id.). The plaintiff, without citing any cases in support of his position, claims he has alleged sufficient facts to sustain both causes of action. (Doc. No. 15).

The PSTCA "abrogates the liability of a local agency only for certain narrowly excepted negligent acts listed at 42 PA.CONS.STAT.ANN. §8542(b). 'Negligent acts' do not include 'acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.' 42 PA.CONS.STAT.ANN.

§8542(a)(2)." *Agresta v. City of Philadelphia*, 694 F.Supp. 117, 123 (E.D.Pa. 1988). There are eight exceptions where tort liability for negligence is not barred: "(1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals." *Weinstein v. Bullick*, 827 F.Supp. 1193, 1205-6 (E.D.Pa. 1993)(citing 42 Pa.C.S.A. § 8542(b)). As the plaintiff's claim does not fall into the eight enumerated exceptions, it is barred by statute. The plaintiff's claim of NIED in Count VIII is **DISMISSED** with prejudice.

Turning to the plaintiff's claim of IIED, the Pennsylvania Supreme Court has not yet recognized that tort, but the Superior Court and the Third Circuit have both predicted that the Supreme Court would adopt the RESTATEMENT (SECOND) OF TORTS §46, which provides, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Clark v. Township of Falls*, 890 F.2d 611, 622-23 (3d Cir. 1989)(citing *Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183 (1987)). To qualify as outrageous or extreme conduct, the behavior must be so outrageous or so extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988); *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa.Super. 2005)(internal citation omitted). "Pennsylvania courts have found action for IIED to exist only in limited circumstances, where the conduct is *clearly* outrageous." *Snyder v. Speciality Glass Products, Inc.*, 658 A.2d 366, 375 (Pa. Super. Ct. 1995)(citations omitted). Even accepting all of the plaintiff's claims as true, the defendants' actions of holding several adversarial meetings, of withholding the basis of the termination hearing, and of suspending the plaintiff without pay for a period of time are not so "extreme and very offensive to the moral value of society" to support a cause of action for IIED. *Silver v. Mendel*, 894 F.2d 598, 606 (3d Cir. 1990). As such, the plaintiff's claim for IIED in Count VIII is **DISMISSED** with prejudice.

Punitive Damages

The plaintiff's complaint further seeks both compensatory and punitive damages. Both parties acknowledge that, as a general proposition, municipalities cannot be held liable for punitive damages save for a statue expressly authorizing such damages. (Doc. No. 12; Doc. No. 15). "[M]unicipalities, and more broadly, state and local governments entities, are immune from punitive damages under" 42 U.S.C. §1983. *Doe v. County of*

*Centre, PA*, 242 F.3d 437, 455 (3d Cir. 2001). The plaintiff has not named any defendant in his or her individual capacity. Given that school board officials acting in their official capacity fall into this exclusion, *Smith v. School Dist. Of Philadelphia*, 122 F.Supp.2d 417, 434-35 (E.D.Pa. 2000), the plaintiff's claims for punitive damages against the defendants acting in their official capacity are **DISMISSED** with prejudice.

## V.     CONCLUSION

For the reasons articulated above, the defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**December 31, 2013**
O:\Mannion\shared\MEMORANDA - DJ\2013 MEMORANDA\13-1519-01.wpd