**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH P. MOFFITT,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:13-1519** |
| **v.** | : | **(JUDGE MANNION)** |
| **TUNKHANNOCK AREA SCHOOL DISTRICT and the TUNKHANNOCK AREA SCHOOL DISTRICT BOARD OF SCHOOL DIRECTORS,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Presently before the court are several post-trial issues remaining after a jury verdict in favor of the plaintiff, Joseph P. Moffitt. On April 19, 2016, after a two-day trial, the jury found that the defendant, Tunkhannock Area School District (the "School District"), violated the plaintiff's constitutional due process rights when the defendant suspended the plaintiff from his elementary school principal position, without pay, on June 7, 2012.[1] First, the parties filed submissions regarding the calculation of damages for the plaintiff's back pay award. (Doc. 80, Doc. 81). Second, the defendant and counsel for the

[1]Both parties refer to the Tunkhannock Area School District Board of School Directors (the "School Board") as a defendant. On April 19, 2016, the court terminated the School Board as a party. The School District is the sole defendant left in the action.

defendant, Robin B. Snyder, Esq., ("Snyder"), filed motions to quash the plaintiff's subpoena to produce documents relating to the defendant's legal fees in the litigation. (Doc. 88, Doc. 91). Third, the plaintiff filed a motion for a hearing on the issue of the plaintiff's award for attorney's fees. (Doc. 95). For the reasons discussed below, the motions to quash are **GRANTED**. The plaintiff's motion for a hearing on the issue of attorney's fees is **GRANTED** and a hearing will be held on the issues of back pay and attorney's fees as noted below.

## I. DISCUSSION

### A. Back Pay

During the trial, the court instructed the jury after the close of evidence that, in awarding the plaintiff any damages, the jury should consider emotional and mental harm, harm to the plaintiff's reputation, and/or the penalty for the plaintiff's early withdrawal of his 403(b) retirement plan during his suspension and associated tax. The court further instructed the jury that damages, if any, for back pay, contractual retirement contributions, attorney's fees, and costs of litigating the case would be determined by the court.

Following deliberations, the jury awarded the plaintiff $40,000.00, and at

the conclusion of trial, the court ordered the parties to submit letter briefs on the computation of damages for back pay. On April 29, 2016, the plaintiff submitted a letter brief arguing that he is entitled to 116 days of back pay in the amount of $44,014.12, which includes prejudgment interest. (Doc. 80). The plaintiff also contends that he will be subject to a 10% increased tax burden resulting from a lump sum back pay award and argues that he is entitled to an additional $4,401.41 to "offset" the negative tax consequences, to bring the total award for back pay to $48,415.53. On April 29, 2016, the defendant also submitted a letter brief arguing that the plaintiff is only entitled to 114 days of back pay in the total amount of $19,587.26, which includes prejudgment interest but accounts for several deductions, including federal and state income taxes, retirement contributions, and insurance premiums. (Doc. 81, Doc. 81-1). The defendant opposes any offset to the plaintiff for alleged negative tax consequences.

What should have been a simple and straightforward mathematical computation of back pay has instead turned into a battle over numbers, prolonging these proceedings. A hearing will be held on the damages for back pay, during which the parties must provide proof, including supporting documentation, for their back pay calculations.

### B. Motions to Quash and Motion for Hearing

Unsurprisingly, the parties also disagree on many points regarding the plaintiff's attorney fee award. Following the trial, on May 3, 2016, the plaintiff filed a motion for attorney's fees, and a supporting brief on May 17, 2016. (Doc. 82, Doc. 83). The defendant filed an opposing brief on May 31, 2016, raising the following objections: 1) the motion seeks fees for tasks not related to this litigation, namely fees for administrative proceedings; 2) the number of hours claimed by plaintiff's counsel is unreasonable; 3) the billing rate of plaintiff's counsel is unreasonable; 4) the amount claimed for the work of attorney Theresa Moffitt, plaintiff's sister, should not be awarded; and 5) the results obtained should reduce the lodestar. (Doc. 85).

On June 14, 2016, the plaintiff filed a reply brief in support of his motion for attorney's fees. (Doc. 87). The plaintiff noted that he issued subpoenas under Fed. R. Civ. P. 45 to Snyder, Board of Education Solicitor, Frank J. Tunis, Jr., and Tunkhannock Area School District attorney, Jeffrey Tucker. The subpoenas demanded that the three attorneys produce retainer agreements, legal invoices, and time records in this litigation. At issue is the subpoena

directed towards Snyder. (Doc. 93).[2] The other attorneys have been silent on the issue.

In response, the defendant filed a motion to quash the subpoena and a supporting brief on July 1, 2016. (Doc. 88, Doc. 90).[3] On July 5, 2016, defense counsel Snyder also filed a motion to quash and a supporting brief. (Doc. 91, Doc. 92). The defendant and Snyder, (collectively, the "defense"), argue that the information that plaintiff seeks is irrelevant and lacks any probative value. Further, they contend that the subpoena is unduly burdensome because it requires the expense of a considerable amount of time in producing the records. Finally, they assert that counsel's billing and time records are protected by the attorney-client privilege. Because the motions to quash are nearly identical, the court considers the two motions collectively.

---

[2]The subpoena commands Snyder to produce:
1. Any and all time keeping slips and records regarding time spent defending the Tunkhannock Area School District and/or its Board of School Directors in the above-captioned matter.
2. Any and all bills, invoices, and/or other correspondence for payment of attorney's fees for defending the Tunkhannock Area School District and/or its Board of School Directors in the above-captioned matter.
3. Any and all retainer agreements between you and/or your respective law firm for defending the Tunkhannock Area School District and/or its Board of School Directors in the above-captioned matter.

[3]The defendant also filed amended exhibits to its supporting brief. (Doc. 93).

On July 15, 2016, the plaintiff filed a brief in opposition to Snyder's motion to quash. (Doc. 94). The same day, the plaintiff filed a motion for a hearing on the issue of attorney's fees. (Doc. 95). On August 1, 2016, the defense filed a reply brief in support of the motions to quash. (Doc. 96). The plaintiff argues that the information regarding defense counsel's fees is highly relevant, especially in light of the objections raised against the plaintiff's attorney fee petition. The plaintiff points to the defendant's allegation that the amount of time claimed by plaintiff's counsel is excessive and states, "it is axiomatic that the reasonableness of fees can be demonstrated by those expended by the opposing party." (Doc. 94 at 3) (citations omitted).

Fed. R. Civ. P. 45 authorizes parties to serve subpoenas on parties or non-parties commanding the production of books, documents, electronically stored information, or tangible items. Fed.R.Civ.P. 45(d)(3) mandates that a court quash or modify a subpoena, "upon timely motion," for 1) failing to provide a reasonable time to comply; 2) requiring a person to comply beyond the geographical limits as stated in the Rules; 3) requiring "disclosure of privileged or other protected matter"; or 4) subjecting a person to an "undue burden."

"Although irrelevance is not among the litany of enumerated reasons for

quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005). Evaluation of relevancy follows from the rule that a subpoena may only seek information that is discoverable, i.e., information that is not privileged and relevant to the claim or defense of any party, Fed. R. Civ. P. 26(b)(1), "or if the court has broadened the scope of discovery, relevant to the subject matter involved in the action," Prac. Guide Fed. Civ. Proc. Before Trial (5th Cir.) Ch. 11(IV)-F (quotation omitted). The Third Circuit has upheld district court orders quashing subpoenas due to the responding party's failure to demonstrate the relevance of the desired information. See Smith v. BIC Corp., 869 F.2d 194, 202 (3d Cir. 1989); Ekhato v. Rite Aid Corp., 529 F. App'x 152, 154 n.3 (3d Cir. 2013) (non-precedential opinion). Therefore, relevancy of the information demanded is a significant factor in determining whether to quash a subpoena.

    Here, the parties disagree on the amount of attorney's fees to which plaintiff's counsel is entitled. The defense argue that the information sought by the plaintiff is not relevant to the issue of attorney's fees and has no probative value. The plaintiff acknowledges the split of authority on the relevancy of an opposing party's billing records to an attorney fee award but argues that the

defense have put the reasonableness of hours and rates at issue, warranting an examination of the defendant's records. (Doc. 94 at 5). In In re Fine Paper Antitrust Litig., 751 F.2d 562, 587 (3d Cir. 1984) ("Fine Paper"), the Third Circuit described information on the opposing party's legal fees as "relevant, and arguably even helpful" in determining an attorney fee award, but the Third Circuit upheld the district court's decision quashing subpoenas seeking this information. Noting that "discovery rulings are reviewed . . . for abuse of discretion," the Third Circuit concluded that it "cannot hold that the court abused its discretion in denying the motion" after "[c]onsidering all the evidence offered on hours and rates, and the likelihood that such discovery would generate inquiries into collateral matters, such as privilege . . . ." Id.

In the instant matter, the court exercises its discretion to quash the plaintiff's subpoena because the subpoena seeks information that is only marginally relevant. This is not a complicated case involving complex litigation as in the antitrust class action in Fine Paper. Similar to the issues at trial, which only lasted two days, the issues regarding attorney's fees in this matter are relatively simple. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides

an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). As the plaintiff has the burden of demonstrating the reasonableness of both the hours expended and hourly rates, the plaintiff has provided the court with information in support of his petition. See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 (3d Cir. 2005). The court sees no need to go much further than this starting point, certainly not to information on defense counsel's fees.

Although the defendant argues that information regarding its legal fees is privileged and confidential, the court disagrees with this blanket assertion. The court acknowledges the possibility that some information in the defendant's billing and time records may be privileged and thus would need to be redacted by defense counsel. See Montgomery County v. MicroVote Corp., 175 F.3d 296, 305 (3d Cir. 1999) (concluding that while the fee agreement between the attorney and client was not privileged, the specific billing records at issue were privileged). Thus, delving into defense counsel's records would indeed "generate inquiries into collateral matters, such as privilege." Fine Paper, 751 F.2d at 587. The marginal relevance of the information does not warrant the burden imposed on defense counsel or the court's attention. Accordingly, the court will grant the motions to quash.

Finally, the plaintiff filed a motion for "an evidentiary hearing in support of the Plaintiff's Motion for Attorneys Fees and concerning the matters raised by the Plaintiff's issuance of subpoenas . . . ." (Doc. 95). In light of the court's ruling on the motions to quash, the court will not permit the plaintiff to present evidence supporting his demand for information on the defendant's legal fees. At the upcoming hearing, in addition to the issue of back pay, the parties should be prepared to present evidence and argue their respective positions regarding the issue of attorney's fees, including whether the plaintiff should be awarded attorney's fees in connection with the administrative proceedings.

## II.  CONCLUSION

Accordingly, the motions to quash will be granted. The plaintiff's motion for a hearing will be granted, as noted above, and a hearing will be held on the issues of the plaintiff's damages for back pay and award for attorney's fees on **August 22, 2016 at 1:30 P.M.**

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 15, 2016**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1519-04.wpd