## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH P. MOFFITT,** | **:** | |
| **Plaintiff** | **:** | **CIVIL ACTION NO. 3:13-1519** |
| **v.** | **:** | **(JUDGE MANNION)** |
| **TUNKHANNOCK AREA SCHOOL DISTRICT,** | **:** | |
| | **:** | |
| **Defendant** | **:** | |
| | **:** | |

## <u>MEMORANDUM</u>

Presently before the court is the plaintiff's, Joseph P. Moffitt's, motion for attorneys' fees and costs, (Doc. 82), with four (4) letters supplementing the motion and adding additional fees, (Docs. 105, 106, 107, 108). In addition, before the court are the parties' submissions regarding the calculation of damages for back pay. (Docs. 80, 81, 104). The plaintiff's motion and the parties' submissions follow a jury verdict entered in favor of the plaintiff on April 19, 2016. The jury in the plaintiff's case found that the defendant, Tunkhannock Area School District ("School District"), violated the plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution, therein violating Title 42, Section 1983 of the United States

Code.[1] For the reasons discussed below, the plaintiff's motion for attorneys' fees and costs is **GRANTED IN PART** in the amount of $79,467.03. In addition, the plaintiff is awarded back pay in the amount of $20,221.48 and prejudgment interest on the back pay award in the amount of $3,443.61.

## I.    BACKGROUND

On April 19, 2016, after a two-day trial, a jury found that the defendant violated the plaintiff's due process rights under the Fourteenth Amendment when the defendant suspended the plaintiff from his elementary school principal position, without pay, on June 7, 2012. The court instructed the jury that, in awarding the plaintiff any damages, they should consider emotional and mental harm, harm to the plaintiff's reputation, and/or the penalty for the plaintiff's early withdrawal of his 403(b) retirement plan during his suspension and any associated tax. The court further instructed the jury that any damages for back pay, contractual retirement contributions, attorneys' fees, and costs of litigating the case would be determined by the court.

---

[1] Both parties also refer to the Tunkhannock Area School District Board of School Directors ("School Board") as a defendant. On April 19, 2016, the court terminated the School Board as a party. The School District is the sole defendant left in this action.

The jury awarded the plaintiff $40,000.00 and at the conclusion of trial the court ordered the parties to submit letter briefs on the computation of damages for back pay. On April 29, 2016, the plaintiff submitted a letter brief arguing that he is entitled to 116 days of back pay in the amount of $44,014.12, inclusive of prejudgment interest. (Doc. 80). In his letter, the plaintiff also contended that he would be subject to a ten percent increased tax burden resulting from a lump sum back pay award and argued that he is entitled to an additional $4,401.41 to "offset" this negative tax consequence, bringing the total award for back pay to $48,415.53. On April 29, 2016, the defendant submitted a letter brief arguing that the plaintiff is only entitled to 114 days of back pay in the total amount of $19,587.26, which included prejudgment interest but also accounted for several deductions, including federal, state, and local taxes, retirement contributions, and insurance premiums. (Docs. 81, 81-1). The defendant opposed any offset to the plaintiff for alleged, negative tax consequences.

On May 3, 2016, the plaintiff also filed a motion for attorneys' fees, with a supporting brief filed on May 17, 2016. (Docs. 82, 83). The defendant filed a brief in opposition on May 31, 2016. (Doc. 85). On June 14, 2016, the plaintiff filed a reply brief in support of his motion for attorneys' fees. (Doc. 87). The

plaintiff's motion requested a total of $1,122.31 in costs and $96,897.81 in attorneys' fees on behalf of the plaintiff's counsel, Andrew J. Katsock, III, and on behalf of the plaintiff's sister, Theresa Moffitt, who is a licensed attorney. Attorney Moffitt aided Attorney Katsock with the litigation.

On October 23, 2016, November 20, 2016, December 7, 2016, and December 29, 2016, the plaintiff submitted letters to the court supplementing the motion for attorneys' fees by indicating additional fees incurred by Attorney Katsock due to his post-trial work. (Docs. 105, 106, 107, 108). These additional fees totaled $11,427.62. According to the plaintiff's last letter to the court, (Doc. 108), the plaintiff's motion now seeks a total of $109,447.74 in attorneys' fees and costs when adding post-trial work.

On August 22, 2016, the court conducted a hearing regarding the issues of the plaintiff's award for back pay damages and his request for attorneys' fees. At this hearing, the parties agreed on two matters: (1) using 116 days as the appropriate amount of days used to calculate back pay at a rate of $301.95 per day; and (2) the defendant was entitled to deduct ten percent of the premium for the plaintiff's health insurance because the defendant paid that amount on behalf of the plaintiff during the suspension, an amount that would normally be deducted from the plaintiff's salary.

4

At the conclusion of the hearing, the parties still did not agree on a final amount for the plaintiff's back pay. The plaintiff's calculations were based on his own knowledge, having prepared his own tax returns for many years. Meanwhile, the defendant's calculations were based upon documents provided by the defendant's business manager. (*See* Doc. 81). Originally, the plaintiff's calculation did not include any deductions, while the defendant's did. (*See* Doc. 80). The plaintiff's most recent calculations do exclude federal, state, and local income taxes, taxes paid by employees under the Federal Insurance Contributions Act, 26 U.S.C. §3101 *et seq* ("FICA"), and exclude the plaintiff's ten percent insurance premium. (*See* Doc. 104, at 3).

The parties also did not agree on the method of calculating prejudgment interest, nor did they agree on the negative tax implications that might be suffered by the plaintiff due to a lump sum award. In addition, they disagreed substantially regarding the attorneys' fees submitted by the plaintiff for Attorney Katsock's and Attorney Moffitt's work on the case. Both Attorney Katsock and Attorney Moffitt testified in support of their fees during the hearing.

At the end of the hearing, the parties requested more time to figure out the discrepancies in the underlying back pay calculations. The court instructed the parties to respond to the court in a week with final back pay numbers,

indicating whether the parties agreed or disagreed on a final amount. The court also advised the plaintiff that he would need to submit proof in support of any negative tax implication. The court indicated it would need more than the plaintiff's own, personal calculation regarding a negative tax implication. The court also urged the parties to come to an agreement on the amount for back pay and/or attorneys' fees.

On September 2, 2016, the plaintiff submitted a letter from Joseph Lubash, MBA, EA, a managing partner of a tax firm in Montrose, Pennsylvania. (Doc. 104). Revised back pay calculations were included with the letter. In his letter, Mr. Lubash indicated that he reviewed the plaintiff's income and tax calculations and he confirmed that those calculations were correct. Mr. Lobash's letter also stated that any changes to the "base data" provided to him would alter the actual tax paid for the year. Mr. Lobash did not indicate in his letter what base tax data was provided to him in reaching his opinion—the court assumes it included the calculations attached to the letter provided to the court. The defendant has not submitted any documents to the court since the hearing, nor has the defendant objected to the revised back pay calculation provided by the plaintiff. The defendant also has not responded to the plaintiff's letters to the court supplementing the motion for attorneys' fees and costs.

Neither parties have indicated that an agreement has been reached with regard to the amount of back pay or attorneys' fees and costs.

## II.   THE PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

The plaintiff originally requested $96,897.81 in attorneys' fees and $1,122.31 in costs. His request currently totals $109,447.74. The defendant made several, initial objections to the plaintiff's request. These objections included the following: 1) the hours billed and $250.00 rate allotted for Attorney Katsock's work are unreasonable; 2) fees for Attorney Moffitt's work should not be awarded, or, in the alternative, the hours billed and $150.00 rate for her work in the case are unreasonable; 3) Attorney Katsock's and Attorney Moffitt's billing is inflated with respect to any clerical or administrative tasks they performed; 4) the motion seeks fees for tasks not related to this litigation, namely fees for administrative proceedings; and 5) the results obtained should reduce the lodestar. The court agrees with some of the defendant's objections and will adjust the award accordingly. Thus, the plaintiff's motion for attorneys' fees is granted in part. After correcting mathematical errors and making adjustments, the court finds that the plaintiff is entitled to an award for attorneys' fees and costs in the amount of $79,467.03.

## A.    Legal Standard

The authority for awarding attorney's fees in this case is Title 42, Section 1988 of the United States Code. This provision grants district courts discretion to award "a reasonable attorney's fee" to the prevailing party "[i]n any action or proceeding to enforce [civil rights statutes, including Section 1983 actions]." 42 U.S.C. §1988(b). A party may be considered a prevailing party entitled to attorneys' fees if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 754, 758 (1980)* (per curiam)*). Here, there is no dispute that the plaintiff is the prevailing party in this action and that the plaintiff is entitled to a reasonable award of attorneys' fees and costs. The defendant, however, challenges the reasonableness of the attorneys' fees and costs requested by the plaintiff.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433. This calculation is referred to as the "lodestar." *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008).

8

Initially, the party seeking attorneys' fees bears the initial burden of demonstrating the reasonableness of the fees. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). To meet this burden, the fee petitioner "must submit evidence supporting the hours worked and the rates claimed." *Rode*, 892 F.2d at 1183 (quoting *Hensley*, 461 U.S. at 433). Once the fee petitioner has met this initial burden, the party challenging the request bears the burden of showing that the request is unreasonable. *McKenna v. City of Phila.*, 582 F.3d 447, 459 (3d Cir. 2009).

Where there are objections, the court is given discretion to reduce fees, but this discretion is not unlimited. The court may not decrease an award based on factors not raised by the party opposing the request. *Id.* Further, if "the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." *Watcher v. Pottsville Area Emergency Med. Serv., Inc.*, 559 F. Supp.2d 516, 521 (M.D. Pa. 2008) (quoting *Ridley v. Costco Wholesale Corp.*, 217 F. App'x 130, 139 (3d Cir. 2007)). In light of any objections, the court must provide its reasoning when awarding fees and should provide a clear and concise explanation for the award. *Planned Parenthood of Cent. N.J. v. Att'y Gen. of*

*State of N.J.*, 297 F.3d 253, 266 (3d Cir. 2002). "[T]he type of reduction made by a district court need not be exactly the same as that requested by the adverse party, 'as long as the fee applicant is given sufficient notice to present his or her contentions with respect to the reduction that the district court ultimately makes.'" *McKenna*, 582 F.3d at 459 (quoting Bell v. United Princeton Prop., Inc., 884 F.2d 713, 722 (3d Cir. 1989)).

### B.    Reasonable Hourly Rates

The defendant disputes Attorney Katsock's and Attorney Moffitt's hourly fee. The plaintiff has submitted the billing for Attorney Katsock and Attorney Moffitt, in addition to affidavits supporting Attorney Katsock's fee. No evidence was submitted to contradict Attorney Katsock's rate. In light of this, the court is without discretion to adjust Attorney Katsock's hourly fee. No evidence was offered to support or contradict the $150.00 per hour rate for Attorney Moffitt, other than Attorney Moffitt and Attorney Katsock's own testimony that her rate is reasonable. The court finds that her hourly fee is reasonable. These rates are reasonable, however, only when used to bill for services that are not clerical or paraprofessional in nature.

The general rule is that a reasonable hourly rate for legal services is calculated according to the prevailing market rates in the community. *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984); *Student Pub. Interest Research Grp. of N.J., Inc. v. AT&T Bell Labs.*, 842 F.2d 1436, 1448 (3d Cir. 1988) (adopting the community market rule). This determination is a finding of fact. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). An attorney's customary billing rate is usually an appropriate place to start in determining the prevailing market rate, but this is not dispositive. *Id.* at 180; *D'Orazio v. Washington Twp.*, No. 07-cv-5097-JEI-KMW, 2011 WL 6715635, at *2 (D.N.J. Oct. 18, 2011) (citation omitted). "The Court should consider the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Watcher*, 559 F. Supp.2d at 521 (citing *Maldonado*, 256 F.3d at 184). Affidavits of other attorneys practicing in the same market may also be offered as evidence to establish the prevailing market rate. *See Ellis v. Ethicon, Inc.*, No. 05-726, 2010 WL 715403, at *2 (D.N.J. March 1, 2010).

i.   Attorney Katsock's Hourly Rate

In the instant matter, the plaintiff seeks hourly fees in the amount of $250.00 for Attorney Katsock. In support of this request, Attorney Katsock submitted an affidavit outlining his professional background and his experience in employment and constitutional litigation and he testified during the August 22, 2016 hearing in support of his fees. In his affidavit, Attorney Katsock asserts that the different hourly rates requested for Attorney Moffitt and himself are reasonable and that they are significantly lower than those charged by attorneys of comparable experience and expertise in the community. The defendant opposes Attorney Katsock's rate on the grounds that he is not experienced in civil rights litigation, although the defendant submits that the rate is appropriate with respect to civil defense, personal injury, corporate, and employment litigation. The court disagrees with the defendant's position.

Attorney Katsock maintains a private law practice and has been practicing law for 16 years. In his reply brief, the plaintiff listed eleven employment, civil rights, and constitutional cases that Attorney Katsock has litigated in this district alone. (Doc. 87, at 4–6). During the August 22, 2016 hearing, the plaintiff also submitted a declaration from Cynthia Pollick, who is an attorney practicing in this district, primarily in civil rights litigation. (Doc.

102). Ms. Pollick's declaration states that the requested hourly rate of $250.00 is reasonable because it is well under the market rate charged by attorneys in the local area. She alleges that her current hourly rate is $400.00 per hour. Ms. Pollick also attached an exhibit to her declaration containing an affidavit from defense counsel, Robin Snyder, that was provided in a different case within this district,[2] in which Attorney Snyder affirms "that a plaintiff's civil rights attorney in the Scranton legal market with approximately twenty-five years of experience, based upon [her own] experience and knowledge, typically charges $250–$300 per hour." (Doc. 102, Ex. A ¶7). Attorney Katsock was also cross-examined by defense counsel at the August 22, 2016 hearing and affirmed his position that his fees are reasonable. Defense counsel did not present evidence of a market rate lower than the $250.00 requested on behalf of Attorney Katsock.

The court finds that the plaintiff has sustained his burden as to Attorney Katsock's requested rate of $250.00 per hour for legal services. The plaintiff presented Attorney Katsock's affidavit and testimony attesting that the rate is significantly lower than that charged by attorneys of comparable expertise in the community. The plaintiff also represented in his reply brief that Attorney

---

[2] *Young v. Smith*, No. 3:07-cv-00854-MWB (M.D. Pa.).

Katsock litigated several matters involving civil rights and/or constitutional actions in federal court, particularly in this district. The defendant did not produce any evidence contradicting the plaintiff's requested rate. Further, defense counsel has previously attested in another case that a reasonable rate for an experienced civil rights attorney in the Scranton legal market is $250.00 to $300.00 per hour. Thus, having met his initial burden for the reasonableness of Attorney Katsock's rate, and without credible contradictory evidence from the defendant, the district court is without discretion, nor does it believe it necessary to adjust the plaintiff's requested rate for Attorney Katsock downward. *Watcher*, 559 F. Supp.2d at 521. As such, the court will use the reasonable rate of $250.00 per hour in calculating Attorney Katsock's fees for legal services.

### ii.   Attorney Moffitt's Hourly Rate

The plaintiff requested hourly fees in the amount of $150.00 for his sister, Attorney Moffitt. The defendant objects to any compensation for Attorney Moffitt in this case and also argues that her rate is unreasonable. With respect to her rate, the defendant argues that the plaintiff failed to satisfy his burden in demonstrating the reasonableness of Attorney Moffitt's $150.00 hourly fee

because her resume is not attached to the attorney fee petition, and that in any case, she is not experienced in civil rights litigation. The defendant further argues that Attorney Moffitt should not be billed as an attorney because Attorney Katsock stated in his affidavit that Attorney Moffitt "acted as [his] legal assistant in this matter." (Doc. 82, ¶17). The court finds that Attorney Moffitt's hourly rate is reasonable.

The plaintiff did not submit an affidavit from Attorney Moffitt testifying to her experience. However, during the August 22, 2016 hearing, both Attorney Katsock and Attorney Moffitt testified that they had an initial conversation on June 8, 2012, the day after the plaintiff was originally suspended, in which they agreed that Attorney Moffitt would assist in the case as an attorney and would be compensated at a rate of $150.00 per hour in the event that the plaintiff prevailed. Their agreement was never reduced to writing. Attorney Katsock also testified that Attorney Moffitt served in the capacity of an attorney and not as an administrative assistant, despite his previous description of her as a "legal assistant."

Attorney Moffitt then testified that she has been licensed to practice law in Pennsylvania for approximately 23 years. She testified that she currently works as a contract negotiator for Frontier Communications, although she did

previously work for a private practitioner for a few years. Attorney Moffitt admitted that she had no experience in civil rights litigation. She also testified that she aided the litigation by doing research and helping with briefs. Attorney Moffitt's billing indicates that the majority of her work did, in fact, entail legal research and writing. (Doc. 82-5). The defendants cross-examined Attorney Moffitt, but, again, they did not submit any evidence to suggest another rate would be applicable, seemingly adhering to the theory that she should not be compensated at all.

Attorney Moffitt is entitled to attorney's fees at her requested rate of $150.00 per hour. The court is satisfied that Attorney Moffitt served in her capacity as an attorney and not as a legal assistant in this matter. Attorney Moffitt has substantial legal experience and has contributed work product to this litigation as indicated by the billing submitted to the court. Although she has not been practicing in the field of civil rights litigation, the lower rate of $150.00 per hour reflects her level of expertise in the area, as compared to Attorney Katsock's rate of $250.00 per hour. Researching case law and preparing briefs are normal functions performed by an attorney assisting a lead attorney on a case and these tasks formed the bulk of Attorney Moffitt's

contribution to the litigation. Accordingly, the court will use the reasonably proposed $150.00 rate in calculating her lodestar.

### iii.   Non-Legal Tasks

Attorney Katsock and Attorney Moffitt use one hourly rate in their billing, even though some of this time was spent on tasks that did not require the exercise of legal judgment or skill. The defendant argues that certain tasks billed were clerical in nature and are, therefore, non-billable. At the hearing, Attorney Katsock justified his billing at a single rate based on the fact that he is a solo practitioner without any assistance, either secretarial or paralegal assistance. The court agrees that using an attorney's full hourly rate for every task despite the level of skill required is improper, but does not agree that all of the time the defendant disputes is non-billable.

The Third Circuit Court of Appeals has "cautioned on a number of occasions that when a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable." *Planned Parenthood of Cent. N.J.*, 297 F.3d at 266 (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995)). "The fact that private lawyers may perform tasks other than legal services for their clients, with their

consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees." *Halderman*, 49 F.3d at 942. Thus, reducing the rate for tasks requiring less skill is proper. *See, e.g.,* *McKenna*, 582 F.3d at 456–57; *Loughner,* 260 F.3d at 180.

Contrary to the defendant's suggestion, however, the work performed on these task may be recoverable dependant on the relevant market. *See* *McKenna*, 582 F.3d at 457 (affirming the district court's decision to reduce, but not eliminate, the rate for clerical tasks). For example, paralegal work is clearly recoverable based on the market rates for such services or at cost, which is wholly dependant on the relevant market. *Missouri v. Jenkins ex rel Agyei*, 491 U.S. 274, 285 (1989). In addition, "[i]t is appropriate to distinguish between legal work, in the strictest sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers . . . . Such non-legal work may command a lesser rate." *Id.* at 288 n. 10 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)). However, again, "[i]ts dollar value is not enhanced just because a lawyer [performs these tasks]." *Id.*

The relevant legal market in this case is the Scranton/Wilkes-Barre Market. *See J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, No. 3:07cv85,

2014 WL 1321116, at *5–6 (M.D. Pa. March 31, 2014) (explaining the "forum rate rule"); *see also Interfaith Cmty. Org.*, 426 F.3d at 703–04. Purely clerical work, such as copying and filing, is non-billable and is usually absorbed in the attorney's fee as overhead, which is true in this area and throughout Pennsylvania. *See Poff v. Prime Care Med., Inc.*, No. 1:13-CV-03066, 2016 WL 3254108, at *12 (M.D. Pa. June 14, 2016) (Scranton forum); *Borrell v. Bloomsburg Univ.*, — F. Supp.3d —, 2016 WL 4988061, at *43 (M.D. Pa. Sept. 19, 2016) (Scranton forum); *Evankavitch v. Green Tree Servicing, LLC*, No. 3:12cv2564, 2014 WL 4437645, at *3 (M.D. Pa. Sept. 9, 2010) (Scranton forum); *Walker v. Gruver*, Civ. Action Nos. 1:11-CV-1223, 1:11-CV-1224, 2013 WL 5947623, at *14 (M.D. Pa. Nov. 5, 2013) (Harrisburg forum); *Sheffer v. Experian Info. Solutions, Inc.*, 290 F. Supp.2d 538, 549 (E.D. Pa. 2003) (Philadelphia forum); *Doe v. Ward*, 282 F. Supp.2d 323, 334 (W.D. Pa. 2003) (Pittsburgh forum). In comparison, paralegal work is billable. *See, e.g., United States ex rel. Sharon McKinney v. DHS Techs.*, LLC, No. 3:11-CV-146, 2015 WL 11675668, at *10 (M.D. Pa. Oct. 27, 2015). Recent awards for paralegal fees in this district have ranged from $95.00 to $170.00 per hour. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-CV-0134, 2016 WL 3522964,

at *3 (M.D. Pa. June 28, 2016) (awarding $170/hr); *id.* (awarding $110/hr);

*Evankavitch*, 2014 WL 4437645, at *4 (awarding $95/hr).

The court has reviewed the disputed entries in Attorney Katsock's billing and finds that the following entries are for clerical and paralegal/paraprofessional work and should be treated accordingly:

1.  Filing of documents with Clerk of Court: 6/6/13, 9/2/13, 9/13/13, 9/16/13, 12/10/13, 1/16/14, 3/23/14, 9/14/14, 10/29/14, 11/21/14, 3/4/16, 3/13/16, 4/1/16, 4/13/16, 4/14/16, 5/17/16, 6/14/16, two (2) entries on 7/15/16, 8/9/16, 9/1/16, 10/23/16, 11/20/16, 12/7/16

2.  Preparing waivers and certificates of service: 6/18/13, 9/2/13, 9/5/13, 9/12/13, 11/9/13, 12/10/13, 1/15/14, 3/22/14, 4/29/14, 6/9/14, 6/19/14, 7/21/14, 9/13/14, 10/27/14, 10/29/14, 11/19/14, 11/21/14, 3/1/16, 3/12/16, 4/1/16, 5/17/16, 7/15/16, 8/9/16

Filing documents, whether in person or electronically, requires no legal skill and is a purely clerical or administrative task. *See McKenna*, 582 F.3d at 457 (describing clerical work to include faxing, emailing, filing, scanning, assembling, and conforming). As such, it is non-billable and is absorbed in the attorney's fee. *See Evankavitch*, 2014 WL 4437645, at *3. Therefore, these tasks must be eliminated from the final lodestar altogether.

Document preparation, however, does not clearly fall within the realm of clerical work—even for a simple document such as a certificate of service. *See Jenkins*, 491 U.S. at 288 n. 10 (listing "document production" as a

compensable task performed by a paralegal). At the hearing, Attorney Katsock argued that this task has a legal component because service is required by law and the rules. Instead, the court finds that this task falls within the realm between legal and non-legal work that may be performed by an attorney or a paralegal. Certainly, if an attorney prepared the entire document, including the certificate of service, and simply billed for the preparation of the document without breaking down the components of the document there would be no dispute that the billing (at the attorney's rate) would be appropriate. Thus, there is an artificial line drawn between legal and clerical work just because the attorney decided to provide exacting detail regarding his time spent preparing a document, especially where, as here, the attorney is a solo practitioner without legal assistance.

Although the defendant argues that such work is entirely clerical, the court is not convinced that this is the case and instead finds that this work falls somewhere in between the legal and clerical divide. While the court does not seek to punish the Attorney for providing a detailed account of his time, the court does find that billing at Attorney Katsock's sole rate for this task is inappropriate. The dollar value for these services should not be enhanced just because a lawyer performed the task. *Jenkins*, 491 U.S. at 288 n. 10. Instead

21

the preparation of these simple documents are more appropriately billed at the rate of a paralegal, a paraprofessional whose traditional role crosses between clerical and legal frequently. In this market, paralegal pay varies substantially and neither parties provided evidence of what rate might apply to tasks assigned to paraprofessionals. The court finds the lower rate of $95.00 per hour appropriate in light of cases cited in this forum and in light of the hourly rates for Attorney Katsock ($250/hr) and his less experienced counterpart in this matter, Attorney Moffitt ($150/hr).[3]

In addition to the above compensation for Attorney Katsock, the defendant objects to any compensation for Attorney Moffitt for her hand delivery of exhibits to court prior to trial. Like the filing of documents, this task is purely clerical and administrative, requiring no legal skill. Thus, this task should also be eliminated entirely from the billing as a cost absorbed in the attorney's overhead.

---

[3] This rate is also not far from the rate previously attested to by defense counsel, Robin Snyder, in a different case. (*See* Doc. 102, Ex. A ¶9 (attesting that paralegal rates in the Scranton area range from $70.00 to $90.00 per hour)).

**C.** **Hours Reasonably Expended**

Based upon the defendant's objections, the court must next "determine whether the number of hours spent on the litigation was reasonable." *Watcher*, 559 F. Supp.2d at 522. The court should review the time charged, decide whether the hours entered for certain tasks are reasonable, and exclude those that are "excessive, redundant, or otherwise unnecessary." *Id.* at 522–23 (quoting *Hensley*, 461 U.S. at 434). "Hours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (citation omitted). On numerous occasions, the defendant argues that certain entries are excessive. The court agrees with the defendant in part. In addition, the court notes that the hours provided by the plaintiff in his motion are mathematically incorrect.

i.    Mathematical Corrections for Duplicative Billings

The plaintiff originally requested $96,897.81 in attorneys' fees and $1,122.31 in costs, stating that he seeks compensation for 285.69 hours of work performed by Attorney Katsock and 136.5 hours of work performed by Attorney Moffitt. His request currently totals $109,447.74 when taking into account post-trial work. A review of the billing provided exposes, however, that

his current request is mathematical incorrect due to duplicate entries located in the request for attorneys' fees and the request for costs.

Within Attorney Katsock's line item billing, there are numerous entries entitled "expenses." These "expenses" total $885.31. In addition to being part of Attorney Katsock's line-item billing, this amount was also submitted for compensation separately in a document titled "Costs and Expenses." (*See* Doc. 82-4 (costs totaling $885.31 for court filing fees, copies of deposition transcripts, and postage)). Thus, it appears the plaintiff's motion includes a request for $885.31 submitted twice. The plaintiff cannot seek expenses included in Attorney Katsock's billing when those expenses were requested separately.

In addition, the $96,897.81 original amount for attorneys' fees also included a $5,000.00 flat-fee that Attorney Katsock was willing to accept for any additional legal services. At the time of the original motion, Attorney Katsock estimated a total of 20–30 additional hours of post-trial work would still be needed in the case. However, on October 23, 2016, November 20, 2016, December 7, 2016, and December 29, 2016, the plaintiff submitted letters to the court supplementing the motion for attorneys' fees by indicating the actual, additional fees incurred by Attorney Katsock due to his post-trial work. (Docs.

[105](#), [106](#), [107](#), [108](#)). These additional fees total $11,427.62, which includes $2.62 in expenses. The plaintiff cannot simultaneously request a proposed flat-fee in addition to actual fees incurred. Like the duplicate costs, the plaintiff's original request for post-trial fees must be adjusted to remove the flat-fee now that actual fees have been submitted.

A thorough review of Attorney Katsock's bills reveals that the total hours billed for legal services performed up until the date of the motion—from June 2012 through April 2016—is actually 282.15 hours, not 285.69 hours. The plaintiff's letters to the court since the filing of the motion indicate an additional 45.5 hours of legal work have been performed, bringing Attorney Katsock's total to 327.65 hours. Attorney Moffitt's hours total 136.5 hours as initially indicated in the plaintiff's motion. Properly calculating these amounts to remove duplicative costs, the plaintiff's proposed lodestar totals $102,387.50.[4]

---

[4]

### Initial Lodestar Calculation

| | |
|---|---|
| Attorney Katsock (327.65 hrs at $250.00/hr) | $81,912.50 |
| Attorney Moffitt   (136.5 hrs at $150.00/hr) | $20,475.00 |
| **Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .** | **$102,387.50** |

### ii.   Clerical/Administrative Tasks

Having determined that purely clerical tasks were non-billable, the plaintiff's proposed hours are further reduced. As explained above, Attorney Katsock's filing of documents cannot be billed. There were 24 entries in the billing for this task, 23 billed at .25 hour and one billed at .5 hour. Removing these tasks reduces Attorney Katsock's total billing time by 6.25 hours, from 327.65 hours to 321.4 hours. Similarly, the clerical task performed by Attorney Moffitt must be removed—her hand delivery of exhibits. This entry was for 1.5 hours. Deducting this amount brings Attorney Moffitt's billing of 136.5 hours down to 135 hours.

### iii.   Excessive Amount of Time on Tasks

The defendant argues that the time allegedly expended on certain legal tasks was unreasonable. As examples of this improper billing, the defendant cites Attorney Katsock's billing of .25 hour to prepare certificates of service, 0.25 hour to review certificates of concurrence, and his billing of 0.25 hour to review a court order where the final order was identical to the proposed order filed by Attorney Katsock and was simply signed and dated by the court. The court agrees with the defendant that the plaintiff seeks compensation for

Attorney Katsock's excessive time spent preparing or reviewing straightforward filings.

In addition to arguing that the preparation of service documents was non-billable, the defendant also argued that the time spent on this task was unreasonable. The plaintiff billed 0.25 hour for each of the 23 entries made for preparing a certificate of service, totaling 5.75 hours. The court has already determined that this task is billable at a lesser rate and should be billed at the market rate for such a task, in this case $95.00 per hour instead of Attorney Katsock's full, $250.00 hourly rate. However, the court also agrees with the defendant that the amount of total time billed for this task is unreasonable.

It is unreasonable to request compensation for fifteen minutes of time to prepare waivers or certificates of service, which simply requires changing a few lines once a template for a certificate of service in the case is prepared. This is especially true here where there was a sole individual overseeing and preparing all certificates in the case, Attorney Katsock. The court finds it implausible that it took exactly fifteen minutes for Attorney Katsock, a licensed attorney, to prepare this simple document. Accordingly, the court will reduce the amount of time allotted to these time entries to 0.15 hour (nine minutes).

This reduces the billing from 5.75 hours to 3.45, which will billed at a lesser paralegal rate—in this instance $95.00 per hour.

Next, the defendant objected to the billing of 0.25 hour to prepare and/or review standard certificates of concurrence/non-concurrence.[5] There are three entries for these tasks dated 1/8/14 (review), 11/21/14 (prepare), and 11/25/15 (review). The court agrees that this document is similar to the boilerplate document used in a certificate of service. It is not plausible it took fifteen minutes to prepare or review these standard documents. Thus, the court will reduce these entries from 0.25 to 0.15 hour as it did for the service documents. This further reduces the hours in the lodestar calculation by .45 hour.

The defendant's next objection relates to a November 25, 2014 billing entry titled "Review Court Order granting Plaintiff's Motion for Leave of Court." As its title suggests, this entry relates to an order issued by the court on November 25, 2014. (*See* Doc. 49). This entry totals .25 hour. The defendant argues that review of this document could not have taken that long given its simplicity and given the fact that it was identical to the proposed order submitted by the plaintiff in his motion for leave of court. The court agrees. The plaintiff's proposed order and the court's order are identical and the proposed

---

[5] The defendant has not argued that this is a clerical task, unlike the argument made for Attorney Katsock's preparation of service documents.

document was simply signed and dated, therein converting it to a final order. In addition, the order was comprised of two lines of text and it is implausible that it took fifteen minutes for a skilled attorney to read and understand its contents. Accordingly, this entry will be reduced from .25 to .1 hour.

Next, the defendant objects to Attorney Katsock's billing for a discussion with the plaintiff about costs, particularly a 5/30/14 entry for a telephone call regarding the cost of a deposition transcript billed at 0.2 hour. Rule 1.5(b) of the Pennsylvania Rules of Professional Conduct provides that "the basis or rate of the [attorney's] fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation." In this instance, representation of the plaintiff began in June of 2012. Assuming Attorney Katsock advised the plaintiff of costs that might be associated with his case when he undertook the representation, the court can see no reason why Attorney Katsock would need to have another conversation regarding costs nearly two (2) years later. As such, this entry will be disregarded.

### iv. Dual and Duplicative Tasks

Next, the defendant argues that certain entries submitted by Attorney Moffitt are duplicative. A reduction for duplication of work is only appropriate

"if the attorneys are *unreasonably* doing the same work." *Rode*, 892 F.2d at 1187 (emphasis in original) (quotations omitted). Courts have recognized the need to retain multiple counsel in certain complex cases. *See, e.g.*, *Jean v. Nelson*, 863 F.2d 759, 772 (11th Cir. 1988). Here, the issues presented were fairly straightforward and did not require duplicate counsel at the school board proceedings and at trial.

Based on a comparison of Attorney Katsock's and Attorney Moffitt's entries, both attorneys attended the school board hearings and the trial. The court finds Attorney Moffitt's relevant entries to be unreasonably duplicative as she played no role in any of these proceedings. Her time entries simply state "school board hearing 1," "school board hearing 2," and "school board hearing 3" on 9/19/12, 10/24/12, and 11/11/12. Attorney Katsock was the lead attorney in these proceedings, and only he spoke on behalf of the plaintiff. Attorney Moffitt testified at the August 22, 2016 hearing that she did not present or cross-examine any witnesses during the school board proceedings. Thus, her role was clearly that of an observer. Attorney Moffitt billed a total of 9 hours for these proceedings. The court will eliminate this time as it is duplicative.[6]

---

[6] As discussed further below, the time spent at the school board proceedings did not further this particular litigation and should be eliminated for this reason as well.

The court also finds that Attorney Moffitt's presence at trial was duplicative. This was a relatively straightforward case involving one issue: whether the plaintiff received a proper hearing before his suspension on June 7, 2012 under the Supreme Court precedent of *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). The trial lasted only two days. Moreover, like her entries for the school board proceedings, Attorney Moffitt's time entries for the trial do not indicate her role as one other than that of an observer. The time entries simply state "trial day 1" and "trial day 2" on April 18, 2016 and April 19, 2016, respectively. Attorney Moffitt also testified at the August 22, 2016 hearing that her role at trial was similar to her role at the school board proceedings. The plaintiff has not established what that role was and the court concludes that it was simply the role of observer and unreasonably duplicative. The total time billed for the trial is 12 hours. Deducting for Attorney Moffitt's duplicative work in the school board proceedings and at trial, her time will be reduced by 20.5 hours in the amount of $3,075.00.

v.   Vague Time Entries

In addition to objecting to the reasonableness of the hours billed, the defendant argues that the time entries submitted on behalf of Attorney Katsock

and Attorney Moffitt are vague. The court agrees, in part, which will result in a further reduction of 24.5 hours of time in her billing.

The party requesting fees must submit "fairly definite information as to hours devoted to various general activities, *e.g.*, partial discovery, settlement negotiations, and the hours spent by various classes of attorneys." *United Auto Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007) (quoting *Evans v. Port Auth.*, 273 F.3d 346, 361 (3d Cir. 2001)). It is not required that the attorney submit "the precise activity to which each hour was devoted" nor is it required that "records be kept by task—e.g., for each motion, issue or part of the case." *Washington v. Phila. Cnty. Ct. of C.P.*, 89 F.3d 1031, 1037–38 (3d Cir. 1996) (citation omitted). However, the petition "must be specific enough for the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Souryavong v. Lackawanna Cnty.*, 159 F. Supp.3d 514, 534 (M.D. Pa. 2016) (quoting *Washington*, 89 F.3d at 1037). Where possible, the entry should indicate the nature of the activity, the subject matter of the activity, the date the activity took place, and the amount of time spent on the activity. *Rode*, 892 F.2d at 1191. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

With regard to Attorney Katsock's time, the defendant specifically objects to two separate entries for legal research submitted in Attorney Katsock's billing: an April 13, 2013 entry for 3.5 hours for "[r]esearch and review various causes of action for Joe Moffitt to seek back-pay and damages"; and, a May 28, 2013 entry for 4.0 hours for "Legal Research for federal court Complaint." The defendant objects to the purported vagueness of these time entries, the amount of time spent, and the duplicative nature of the entries. The court finds that the plaintiff has satisfied his burden in requesting compensation relating to the above time entries. The entries describe the performance of legal research for a specific purpose on a specific date, and hence provide sufficient detail. The court also concludes that the time spent on the research was not excessive, and performance of several hours of research in anticipation of filing a complaint more than a month apart was not duplicative.

The defendant additionally argues that many of Attorney Moffitt's time entries are vague. The court agrees that many of Attorney Moffitt's time entries regarding legal research lack sufficient detail to warrant payment. There are several vague descriptions for legal research which simply indicate legal research was performed but do not indicate what was being researched. These time entries include the following entries: Legal Research - 9/20/12 (1.5

hours); 11/11/12 (3.0 hours); 11/12/12 (4.0 hours); 11/28/12 (2 hours); 1/7/14 (2 hours); 8/27/14 (1.5 hours); 10/2/15 (.5 hour); 12/28/15 (2 hours); 2/17/16 (3 hours); 4/11/16 (1.0 hour); 4/18/16 (two entries of 2.0 hours each). (Doc. 82-5). In comparison, some entries do provide a general description of not only the activity being performed but also the general subject matter being researched. (*See, e.g., id.* (entry dated 10/11/12 titled "legal research [L]oudermill and similar")).

Because the above time entries provide no description of the subject matter of the legal research the court is unable to assess their reasonableness. These entries do not indicate what Attorney Moffitt was researching even in cursory detail, unlike other entries which give some description to guide the court. Thus, they are unreasonably vague. These entries total 24.5 hours of time. Accordingly, 24.5 hours will be deducted from Attorney Moffitt's fees.

### D.    Administrative Proceedings

Next, the defendant opposes any compensation for time spent representing the plaintiff during administrative proceedings. Specifically, the defendant rejects that the plaintiff's counsel should be compensated for services related to the plaintiff's unemployment compensation petition and to

representation at the proceedings before the School Board. (Doc. 85, at 1–4). The plaintiff argues that the work performed in these administrative proceedings "contributed directly to the successful outcome in federal court and obviated the need for comparable work in the federal action." (Doc. 87, at 16). The court finds that work related to the plaintiff's request for unemployment compensation should be eliminated from the lodestar. Work related to the school board proceedings should be reduced dramatically, but should not be eliminated altogether.

In *Webb v. County Board of Education*, 471 U.S. 234 (1985), the Supreme Court held that a prevailing plaintiff in a Section 1983 action is generally not entitled to claim attorney's fees for services rendered during administrative proceedings because such proceedings do not consist of time "reasonably expended on the litigation." *Webb*, 471 U.S. at 242 (quoting *Hensley*, 461 U.S. at 433). The Supreme Court, however, carved out an exception where the plaintiff establishes that a "discrete portion of the work product from the administrative proceeding was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before the settlement." *Id.* at 243; *see also Keenan v. City of Phila.*, 983 F.2d 459, 474 (3d Cir. 1992). "Application of this standard is left to the

35

discretion of the district court." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (3d Cir. 1986). In order to merit fees for the administrative proceedings, the plaintiff must identify a "discrete portion of the work product" from the unemployment benefits petition and the school board proceedings, respectively, and demonstrate that the work product was "both useful and of a type ordinarily necessary to advance the civil rights litigation." *Webb*, 471 U.S. at 243.

The court finds that the plaintiff is not entitled to attorneys' fees relating to his application for unemployment benefits. The plaintiff did not identify a discrete portion of work product relating to his unemployment benefits petition that advanced the instant case, a Section 1983 action grounded in a procedural due process deprivation. Eligibility under Pennsylvania's unemployment compensation statute requires a termination of the employee for no-fault causes. *See* 42 PA. STAT. ANN. §752. The plaintiff's Section 1983 action was based on an improper suspension lacking proper procedural due process measures. The court sees no connection between these two actions, much less any work from one that might further the other.

Based on a review of the plaintiff's billing records, the court's calculation shows that Attorney Katsock billed 2.05 hours, or $512.50, for the plaintiff's

unemployment compensation application.[7] The submitted time entries do not reflect that Attorney Moffitt performed any work towards the plaintiff's unemployment compensation petition. Thus, the court will reduce Attorney Katsock's billing by 2.05 hours, or $512.50.

In contrast, the court recognizes that a portion of Attorney Katsock's and Attorney Moffitt's work on the school board proceedings was "associated with the development of the theory of the case" and formed the basis for the plaintiff's constitutional claims. *Webb*, 471 U.S. at 250. However, there is no clear delineation in the billing separating Attorney Moffitt's and Attorney Katsock's work on the school board proceedings from the work on the federal suit and the unemployment compensation petition. All entries after the third hearing in November of 2012 clearly relate to the federal suit, with the first entry by Attorney Katsock titled "[r]eview email from Theresa Moffitt regarding constitutional suit." (Doc. 82-2, at 10). The entries before December are questionable and the court reviews them carefully based on the defendant's objection.[8]

---

[7] *See* Doc. 82-2 (2012 time entries on 8/16, 9/14, 9/25, 10/5, 10/11, 10/12, 2 entries on 10/16, and 10/27).

[8] The total time submitted for reimbursement up to and including the third hearing is 99.55 hours. Attorney Moffitt's time totals 45 hours, which is reduced to 31.5 hours when eliminating the vague and duplicative time entries

In order to isolate the work that aided the litigation in this case, it is important to clarify what issues were litigated and were ultimately successful. In this instance, the plaintiff was successful on his Fourteenth Amendment claim based on the defendant's failure to provide him proper procedural due process measures, as set forth in *Loudermill*, prior to suspending him without pay on June 7, 2012. The administrative hearings after the suspension, while providing one possible avenue for obtaining monetary relief, were not required in order to bring the constitutional claim under Section 1983. The hearings were required under Pennsylvania's statutory law, not federal constitutional law. The hearings restored the plaintiff to his position as principal. The federal claim declared the initial suspension to be unconstitutional.

Some of Attorney Moffitt's and Attorney Katsock's work in defending the plaintiff at the school board proceedings clearly aided the main, underlying issue in this case—whether the defendant violated the due process requirements set forth in *Loudermill*. As such, the court finds that those entries indicating research or work relating to *Loudermill* may be compensated as the type of work that would normally advance the civil rights litigation because

eliminated previously. Attorney Katsock's time totals 54.55 hours, which is reduced to 52.5 hours when eliminating the time spent on the unemployment compensation petition.

research on *Loudermill* would be needed in the Section 1983 action with or without the school board proceedings. Research on *Loudermill* is directly reflected in some of counsels' time entries. (*See, e.g.*, Doc. 82-2, at 8) (10/31/12 entry of Attorney Katsock for 2.0 hours on "Research on Loudermill, Notice, and Due Process"); (Doc. 82-5, at 2) (11/01/12 entry of Attorney Moffitt for 0.5 hour on "1st draft loudermill brief to andy with decription [sic]/explanation"). These entries are reimbursable.

In addition, entries reviewing documents submitted by the School Board and correspondence between the plaintiff and the school board members would be necessary to the litigation, with our without the school board proceedings. A review of the underlying records from and between the parties is undoubtably required for competent representation. Similarly, the initial phone call between the plaintiff, Attorney Katsock, and Attorney Moffitt would be necessary to communicate the underlying facts leading to the representation. As such, these entries are proper. Totaling these and the

above entries provides a total of 19 hours for Attorney Moffitt[9] and 6.25 hours for Attorney Katsock.[10]

Not all of the services performed in relation to the school board hearings were "useful and of a type ordinarily necessary to advance the civil rights litigation." *Webb*, 471 U.S. at 243. Other than those noted above, the rest of the entries prior to and including the third school board proceeding appear to relate specifically to the issues raised during those proceedings. For example, Attorney Katsock's time entries reflect correspondence on scheduling and coordinating subpoenas, as well as discussions with the plaintiff on witnesses for the hearings. (*See, e.g.*, Doc. 82-2, at 3, 5). In addition, there are entries for the preparation and attendance of the three proceedings following the plaintiff's suspension. These entries did not advance this particular litigation and will not be compensated.

---

[9] The court deems the following entries proper: 1) conference call dated 6/8/12 (1 hour); 2) Loudermill research and related brief drafting dated 10/11/12 (2 hours), 10/29/12 (9 hours), 10/30/12 (.5 hour), 11/1/12 (.5 hour), two entries on 11/4/12 (4.5 hours); and 3) meeting with plaintiff regarding research dated 10/19/12 (1.5 hours). (Doc. 82-5, at 2).

[10] The court deems the following entries proper: 1) conference call dated 6/8/12 (1 hour); 2) review emails from school members and communication with the plaintiff regarding said emails dated 9/5/12 (.5 hour) and 9/10/12 (.25 hour); 3) review documents provided by the School Board dated 10/15/12 (1 hour); and 4) *Loudermill* brief drafting dated 10/31/12 (2 hours) and 11/9/12 (1.5 hours). (Doc. 82-2, at 2, 5, 7–9).

Similarly, attendance at the proceedings will not be compensated. At the August 22, 2016 hearing, Attorney Katsock testified that the interests presented at the school board proceedings and those necessary to succeed on the federal claim were inter-woven and that evidence came out of those proceedings that was useful to the due process question in this case. Attorney Katsock likened the school board proceedings to a fact investigation that might occur prior to the filing of a complaint. However, upon cross-examination, Attorney Katsock admitted that he later took the deposition of several school members who he cross-examined at the school board proceedings. Based on this, the court is not convinced that the evidence obtained at the school board proceedings directly related to the underlying case or, it finds in the alternative, that they are duplicative due to the later depositions that Attorney Katsock billed for.

There were many issues raised in the underlying school board proceedings that were unrelated to the *Loudermill* issues in this case. Thus, other than those that clearly indicate Attorney Katsock and Attorney Moffitt were researching *Loudermill* and those that the court finds obviously necessary to litigating this case, the plaintiff has not identified the "discrete portion of work product" that aided him in his Fourteenth Amendment claim.

*Webb*, 471 U.S. at 243. Accordingly, Attorney Moffitt's fees will be reduced by 12.5 hours to eliminate some of the work relating to the post-suspension school board proceedings. Attorney Katsock's fees will be reduced by 2.05 hours to eliminate all work on the unemployment compensation petition and by 46.25 hours to eliminate some work on the school board proceedings.

After reducing the billing to account for miscalculations, clerical tasks, unreasonable amounts of time spent on various tasks, duplicative work, vague entries, and the time spent on administrative proceedings not furthering this litigation, the court finds that the reasonable hours spent on this case total 347.5 hours. Attorney Moffitt's reasonable hours total 77.5 hours. Attorney Katsock's reasonable hours total 270 hours.

## Reasonable Hours Calculation

**Attorney Moffitt**
| | | |
|---|---|---|
| Initial Hours Requested | | 136.5 |
| *Reduction* (Clerical tasks) | (1.5) | |
| *Reduction* (Duplicative work) | (20.5) | |
| *Reduction* (Vague entries) | (24.5) | |
| *Reduction* (Re: Post-suspension Hearings) | (12.5) | |
| Total Reductions | (59.0) | |

***Total*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **77.5**


**Attorney Katsock**
| | | |
|---|---|---|
| Initial Hours Requested | | 327.65 |
| *Reduction* (Clerical tasks) | (6.25) | |
| *Reduction* (Service Docs.) | (2.3) | |
| *Reduction* (Concurrence Certs.) | (0.45) | |

42

| | |
|---|---|
| *Reduction* (Review 11/25/14 Order) | (0.15) |
| *Reduction* (Telephone call Re: Costs) | (0.2) |
| *Reduction* (Unemployment Comp. Petition) | (2.05) |
| *Reduction* (Re: Post-suspension Hearings) | (46.25) |
| Total Reductions | (57.65) |

***Total*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **270.0**

**TOTAL HOURS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **347.50**

Having determined the reasonable rates to be used and the reasonable number of hours, the plaintiff's final lodestar amounts to $78,590.25.


## Final Lodestar Calculation

| | Rate | Hours |
|---|---|---|
| Attorney Katsock | | |
| *Legal services* | $250.00/hr | 266.55 . . . . . . . $66,637.50 |
| *Paraprofessional services* | $95.00/hr | 3.45 . . . . . . . . . $  327.75 |
| | | 270 |
| Attorney Moffitt | | |
| *Legal Services* | $150.00/hr | 77.5 . . . . . . . . . $11,625.00 |

**TOTAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**$78,590.25**


### D.    Adjustment to the Lodestar

Next, the defendant argues that the lodestar amount should be reduced to reflect the plaintiff's limited success in the case, since the plaintiff only succeeded in one of the six causes of action he pled in his amended

43

complaint. The plaintiff's amended complaint alleged the following six counts: Counts I & II for violation of plaintiff's due process rights and rights to equal access to justice; Count III for First Amendment retaliation; Count IV for violation of associational rights; Count V for breach of contract; and Count VI for wrongful suspension in violation of public policy. (Doc. 25). On February 3, 2016, the court partially granted the defendant's motion for summary judgment and dismissed all claims except the Count I due process claim that eventually went to trial. The court does not agree that a reduction is warranted based on the plaintiff's failure to succeed on every single claim.

"[A]n attorney's work on unsuccessful claims not related to the claims on which the attorney succeeded is not compensable, because such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'" *McKenna*, 582 F.3d at 455 (quoting *Hensley*, 461 U.S. at 434–35). "[D]istinctly different claims for relief that are based on different facts and legal theories" must be treated as unrelated claims and the court must apportion the work of the attorney accordingly. *Hensley*, 461 U.S. at 434–35; *see also McKenna*, 582 F.3d at 457. There is no precise rule for making an adjustment to account for the overall level of success achieved, but the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to

44

account for the limited success." *Id.* at 436–37. However, if the claims all stem from a "common core of facts or . . . [are] based on related legal theories," the district court may not be able to divide and apportion individual claims and should, instead, "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.

Here, in light of the results obtained by the plaintiff in this case, the court finds that a downward adjustment of the lodestar amount is inappropriate. While the plaintiff was unsuccessful on some of his claims, most of the unsuccessful claims were related to the one he ultimately prevailed on, the constitutional due process claim. The due process/equal access to justice claim (Counts I & II), First Amendment retaliation claim (Count III), breach of contract claim (Count V), and violation of public policy claim (Count VI) all stem from the plaintiff's suspension on June 7, 2012 and relate to the lawfulness of that suspension under different theories of law—*i.e*, that it was procedurally improper, improper in itself, or was based on improper motives. The violation of associational rights claims (Count IV) does not relate to the suspension and, instead, relates to the lawfulness of the school board proceedings. However, the plaintiff did not defend that claim on summary judgment, as noted in the

court's February 3, 2016 Memorandum. (Doc. 50, at 30). Thus, the court cannot conclude what, if any, time was spent litigating this small, unrelated claim in the larger litigation.

Further, looking at the relief requested and the results obtained, the court finds that apportionment is inappropriate. All of the relief requested in the amended complaint pertained to all counts in the complaint as a whole. The monetary relief requested included reimbursement for back pay, compensatory damages for harm to the plaintiff's reputation, compensation for loss of income, compensation for the ten percent penalty the plaintiff paid for early withdrawal from his 403(b) plan, and attorneys' fees and costs. The plaintiff requested an amount in excess of $75,000.00 for all compensatory damages. The jury awarded the plaintiff $40,000.00 and this court will award him $20,221.48 in back pay after taxes and $3443.61 in pre-tax, prejudgment interest, as discussed below. In total, the final amount will be near the amount originally requested by the plaintiff, though not exact. Thus, it appears clear that the plaintiff achieved overall success in this action, even though he succeeded using only one of the several theories originally pled in the amended complaint. Because of this, the court rejects the defendant's request for a downward adjustment in the lodestar calculation.

### E.    Costs

Finally, the defendant disputes the plaintiff's request for costs due to his alleged failure to demonstrate the costs' "connection to the successful aspects of this case." (Doc. 85, at 5). The plaintiff requests costs in the amount of $1,122.31, (Doc. 82-4), plus an additional $2.62 based on post-trial submissions, totaling $1,124.93. This amount includes expenses for filing with the court, deposition transcripts, postage, and photocopying. The court agrees that the total sum should not be awarded. The court will award the plaintiff's costs, but will reduce any entries relating to the unemployment compensation application or school board proceedings and entries that are not well-documented.

"[P]revailing parties in civil rights cases are generally entitled to recover any reasonable costs associated with litigating their claims, provided that the costs are necessary and properly documented." *Petrunich v. Sun Bldg. Sys., Inc.*, 625 F. Supp.2d 199, 211 (M.D. Pa. 2008). "[I]f a district court, within its discretion, denies or reduces a prevailing party's award of costs, it must articulate its reasons for doing so." *Reger v. The Nemours Foundation, Inc.*, 599 F.3d 285, 288 (3d Cir. 2010). "The denial of costs to the prevailing party

is typically a penalty for 'needlessly bringing or prolonging litigation.'" *Carroll v. Clifford Twp.*, 625 F. App'x 43, 47 (3d Cir. 2015) (nonprecedential). "A party's limited success, taken alone, does not justify denial of costs." *Id.*

More specifically, "[p]arties prevailing in federal court may recover taxable costs referenced in [Federal Rule of Civil Procedure] 54(d)(1) and enumerated in 28 U.S.C. §1920 [,("Section 1920")]." *Petrunich*, 625 F. Supp.2d at 211; *see also Reger*, 599 F.3d at 288. Rule 54(d) creates a "strong presumption" that costs should be awarded to the prevailing party. *Reger*, 599 F.3d at 288. In addition to those items that are reimbursable under Rule 54(d)(1), Rule 54(d)(2) also allows for reimbursement of "related nontaxable expenses." These expenses may include "costs for postage, telephone, expert fees, travel, deposition transcripts, shipping, parking, lodging[,] and food." *Bowers v. Foto-Wear, Inc.*, No. 3:CV-03-1137, 2007 WL 4086339, at *5 (M.D. Pa. Nov. 15, 2007).

As discussed above, the plaintiff is the prevailing party in this case and he is entitled to all costs that are properly documented. Some of the plaintiff's requested costs are standard costs under 28 U.S.C. §1920, including the court filing fees and the costs of copying. The remaining items are "related nontaxable expenses." FED. R. CIV. P. 54(d)(2). Thus, all of the plaintiff's

48

requested costs are proper and generally recoverable. Further, any reduction based on purportedly limited success is not merited, nor is it appropriate as discussed above.

Inherent in the defendant's objection is an objection to the form of the request for costs, which is simply a list totaling the amount of costs on a piece of paper. (*See* Doc. 82-4). The court finds that the requests for filing fees, fees for obtaining copies of depositions, and postage fees are well documented in Attorney Katsock's billing. For example, the court filing fee listed in the document submitted for reimbursement is also listed in an entry dated 6/6/13 in Attorney Katsock's billing. (*Compare* Doc. 82-4, *with* Doc. 82-2, at 2). The cost submitted for copying, however, is not well documented. Other than a blanket fee for "Copying" the plaintiff did not provide any other supporting information to verify the amount requested. Without this supporting information, the court will not reimburse the requested amount. *See Borrell*, 2016 WL 4988061, at *47 (awarding only those costs that are well-documented and supported by bills and/or invoices). Thus, the $237.00 amount listed as a copying expense will be eliminated from the award.

The court also finds that the plaintiff should not be reimbursed for costs related to his unemployment compensation application or costs relating to the

school board proceedings. Reviewing Attorney Katsock's billing up through the third school board proceedings, Attorney Katsock's costs totaled $11.15 in postage. The court is not convinced that these costs related to this litigation. It is more likely that these costs were incurred due to the administrative proceedings prior to the litigation. Thus, $11.15 will be eliminated from the award. In sum, the plaintiff will be awarded a total of $876.78 in well-documented costs, in addition to $78,590.25 in attorneys' fees. This brings the amount of the final award for attorneys' fees and costs to $79,467.03.

## III.   THE PLAINTIFF'S POST-TRIAL DAMAGES AWARD

In addition to attorneys' fees, the plaintiff seeks a total of $20,245.87 in back pay, after income tax and medical premium deductions, in addition to prejudgment interest at a six percent rate compounded quarterly, totaling $9,210.48.48. (*See* Doc. 104, at 3). He also seeks $9,640.77 as compensation for the increased tax burden due to receiving a lump-sum damages award. (*Id.* at 4). At the August 22, 2016 hearing, the parties agreed that the total days used to calculate the back pay should be 116 days at $301.95 per day and that the ten percent health insurance premium that the plaintiff would have normally paid had he not been suspended must be deducted. The plaintiff's most recent

calculations do exclude the following: (1) federal, state, and local income taxes; (2) FICA taxes; and (3) the ten percent insurance premium. (*See id.*). The calculations do not deduct retirement. These deductions were reviewed and confirmed by an accountant, Mr. Lobash, as indicated by the September 1, 2016 letter submitted to the court. (*Id.* at 1). To date, the defendant has not disputed these amounts or submitted contrary numbers for the court's review. Thus, it is unclear if the defendant disputes the plaintiff's revised calculations, but the court will continue to  assume that the defendant does not agree with the revised amount based on the defendant's original objection.

The parties, therefore, continue to disagree on the final back pay amount, the plaintiff's request for compensation due to a purported increased tax burden, and the method of calculating prejudgment interest. With regards to interest, at the August 22, 2016 hearing, the parties agreed on using a six percent rate, but disagreed as to whether the rate should be simple or compound. With respect to the negative tax implication, the defendant did not agree that any amount should be awarded. After careful review, the court finds that the plaintiff is entitled to back pay in the amount of $20,221.48 after taxes and deductions, pre-tax, prejudgment interest on the back pay in the amount

of $3,443.61, and that he has not sustained his burden with respect to the purported tax penalty.

### A. The Plaintiff's Back Pay Award

The purpose of Section 1983 actions "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole, 504 U.S. 158, 161 (1992)*. In light of this purpose, Section 1983 authorizes both legal and equitable remedies comparable to those warranted in actions arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq. Squires v. Bonser*, 54 F.3d 168, 172 (3d Cir. 1995). Like Title VII, Section 1983 damages should seek to make the plaintiff whole. *See id.* Back pay is one form of equitable relief to make a plaintiff whole. *Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 315 (3d Cir. 2006)*. Here, the parties agree that the plaintiff is entitled to 116 days of back pay at a rate of $301.95 per date. This brings the gross pay amount to $35,026.20. The parties also agree that $867.80 should be deducted for the ten percent medical premium that the defendant paid

during the plaintiff's suspension. This brings the pre-tax back pay amount to $34,158.40.

The defendant argues that the plaintiff's back pay award must be reduced to account for several deductions, including federal and state taxes, FICA taxes, and retirement contributions. The defendant asserts that doing so would restore the plaintiff to the same position he would have been had he not been suspended from June 7, 2012 through November 16, 2016. The court agrees in part.

i.   <u>Retirement</u>

The plaintiff's recent calculations do not deduct any amount for retirement, while the defendant's calculations did originally deduct for retirement. At the August 22, 2016 hearing, defense counsel stated that the defendant did not pay retirement contributions, nor did the plaintiff contribute to his retirement during his suspension. In addition, the plaintiff conceded that he was credited years of service towards his retirement during the suspension. Thus, no additional sum was required to be added or to be deducted to make the plaintiff whole with respect to his retirement. As such, the final back pay

should not take into account retirement and the plaintiff's revised back pay calculations are correct in that respect.

### ii.    State and Local Taxes

An award of back pay for purely economic loss is taxable. *See* I.R.C. §61(a) ("[G]ross income means all income from whatever source derived."); §104(a)(2) ("[G]ross income does not include . . . (2) the amount of any damages . . . received . . . on account of personal *physical* injuries or *physical* sickness") (emphasis added). Further, back pay awards under discrimination statutes are clearly taxable. *See Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 441 (3d Cir. 2009). The award is taxable in the year paid. *Id.* The court sees no reason why the same logic would not apply to back pay in a Section 1983 action.

Here, the plaintiff appears to concede that income taxes should be deducted when viewing his most recent calculation of back pay submitted to the court. (*See* Doc. 104, at 3). The calculation of taxes provided by the plaintiff, however, differs from that originally provided by the defendant. *(Compare id.*, *with* Doc. 81-1). The defendant has not objected to the most recent calculation provided by the plaintiff, nor has the defendant submitted

alternative calculations. The court will look to the defendant's original pre-hearing calculation as compared to the plaintiff's most recent back pay calculations.

The court finds the plaintiff's calculations to be the most accurate with respect to income tax deductions. The plaintiff submitted a letter from Mr. Lobash, managing partner at a tax firm, verifying the applicable deduction percentages. When comparing the percentages provided in the plaintiff's calculation with those in the defendant's original calculations, they are nearly identical. Thus, in addition to the verification from Mr. Lobash, the defendant's own calculations appear to confirm the accuracy of the plaintiff's income tax calculations. Accordingly, the gross back pay should be reduced to account for federal, state, and local income taxes to be withheld by the defendant according to the percentages provided in the plaintiff's recent back pay calculation. (*See* Doc. 104, at 3).

The only deductions not included in the plaintiff's recent calculation, as compared to the defendant's original calculations, include the employee contribution of Pennsylvania's unemployment compensation tax ("U/C Tax") and Pennsylvania's local services tax ("LST Tax") and occupational privilege

tax ("OPT tax"). The U/C tax is .07 percent and should be deducted.[7] The court will disregard the LST/OPT tax as it requires the calculation of information not provided to this court and amounts to mere dollars. Deduction of the U/C tax results in a further reduction of the gross back pay award in the amount of $24.52. Accordingly, the final award for back pay amounts to $20,221.48.

### Back Pay Calculation

Gross Back Pay ($301.95 * 116 days) . . . . . . . . . . . . . . . . . . . . . . . $35,026.20
    *Reduction* (Federal income tax - 28%)     ($9,807.34)
    *Reduction* (FICA - 7.65%)     ($2,679.50)
        Soc. Sec. Emp. Contribution - 6.2%
        Medicare Emp. Contribution - 1.45%
    *Reduction* (State income tax - 3.07%)     ($1,075.30)
    *Reduction* (Local income tax - 1%)     ($350.26)
    *Reduction* (U/C tax - .07%)     ($24.52)
    *Reduction* (Med. Ins. Premium)     ($867.80)
Total Deductions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ($14,804.72)

**TOTAL BACK PAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $20,221.48**


    iii.   Prejudgement Interest

Next, the plaintiff seeks prejudgment interest on his back pay award. Ultimately, an award of prejudgment interest is discretionary. *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860, 867 (3d Cir. 1995); *Ellis v. Ethicon, Inc.*, No. 05-

---

[7] *See* Calculating Contributions, Penalties and Interest, Pa. Dep't of Labor, http://www.uc.pa.gov (follow "Employer/UC Services/UC Tax" tab/hyperlink; then follow "Employee Withholding" hyperlink; then follow "Calculating Contributions, Penalties & Interest" hyperlink).

726 (FLW), 2009 WL 10641983, *20 (D.N.J. Nov. 13, 2009). "The award of prejudgment interest is compensatory in nature; it serves to compensate a plaintiff for the loss of the use of money that the plaintiff otherwise would have earned had he not been unjustly discharged." *Booker*, 64 F.3d 860, 868 (3d Cir. 1995) (discussing prejudgment interest in a Title VII action). Prejudgment interest is also equitable in nature and will not be denied unless the award would result in "unusual inequities." *Id.*

Prejudgment interest is only appropriate when applied to an award of past economic harm, which would include back pay. *Poleto v. Consol. Rail Corp.*, 826 F.2d 1270, 1277–78 (3d Cir. 1987), *abrogated on other grounds by* *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990); *Lohman v. Borough*, No. 3:05-CV-1423, 2008 WL 2697309, at *2 (M.D. Pa. July 1, 2008). Generally, there is a strong presumption in favor of awarding prejudgment interest. *Booker*, 64 F.3d at 868. "A district court may exercise its discretion to depart from this presumption only when it provides a justification that reasonably supports the departure." *Id.* Here, there is no reason to depart from the presumption that back pay should be awarded.

At the core of the parties dispute is what method should be used to calculate the prejudgment interest. The parties agreed on the rate of six per

57

cent, which is the Pennsylvania legal rate of interest. *See* 41 PA. CONST. STAT. ANN. §202. They disagreed as to whether this interest rate should calculated on a simple or compound basis. The parties' reliance on the six percent rate is based on the assumption that Pennsylvania law governs. This assumption is incorrect. "[T]he availability of interest in an action arising under a federal statute is governed by federal law, not the law of the forum state." *Savarese v. Agriss*, 883 F.2d 1194, 1207 (3d Cir. 1989) (quoting *Poleto*, 826 F.2d at 1274); *see also Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965). This is also in conformity with Section 1988 which provides that the court should exercise and enforce Section 1983 actions "in conformity with the laws of the United States," and only if there are no applicable laws should the court turn to state law. 42 U.S.C. §1988(a); *see also Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 238 (3d Cir. 2014). There is no federal statute explicitly governing an award of prejudgment interest, but there are federal statutes and case law that provide this court with alternative guidance.

Different courts have used different methods under federal law to determine the applicable prejudgment rate and method. *See Lohman*, 2008 WL 2697309, at *3 (concluding that the Internal Revenue Service's ("IRS") overpayment rates located in 26 U.S.C. §6621(a)(1) should be used to

determine prejudgment interest rate in a Section 1983 case); *O'Neill v. Sears, Roebuck & Co.*, 108 F. Supp.2d 443, 445 (E.D. Pa. 2000) (collecting cases and concluding that the postjudgment statute, 28 U.S.C. §1961(a), should be used to determine prejudgment interest in an employment discrimination case); *Taylor v. Cent. Pa. Drug & Alcohol Servs. Corp.*, 890 F. Supp. 360, (M.D. Pa. 1995) (collecting cases and concluding that 26 U.S.C. §6621(a)(1) should be used to calculate prejudgment interest in an employment discrimination case). The Third Circuit Court of Appeals has previously approved both the use of the IRS market rate and the use of the postjudgment statute. *See Taxman v. Bd. of Educ. of Twp. of Piscataway*, 91 F.3d 1547, 1566 (3d Cir. 1996) (affirming usage of the postjudgment interest statute to calculate prejudgment interest); *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986) (affirming usage of the market rate in 28 U.S.C. §6621 to calculate prejudgment interest). In conformity with courts within this particular district, the court finds that prejudgment interest should be determined according to the IRS overpayment rates set forth in Title 26, Section 6621 of the United States Code. The overpayment rate of Section 6621 remained steady at a three percent rate from January 1, 2012 through March 31, 2016, but rose to four percent for the April 1, 2016 to June 30, 2016 quarter. *See* Rev. Rul. 16-06,

2016-14 I.R.B. 519. The court will use these interest rates in its calculation of prejudgment interest.

As is true with the interest rate, there is no clear uniformity on the issue of compound versus simple interest when calculating the prejudgment interest amount. Some courts using Section 6621 as the basis for prejudgment interest have calculated simple interest. *See, e.g., Supinski*, 2012 WL 2905458, at *4. Others have calculated annual compound interest. *See, e.g., Frazier v. Southeastern Trans. Auth.*, 814 F. Supp. 11, 14 (E.D. Pa. 1993). Others have calculated quarterly compound interest. *See, e.g.*, *E.E.O.C. v. Reads, Inc.*, 759 F. Supp. 1150, 1162 n. 20 (E.D. Pa. 1991). The IRS uses a daily compounded rate for calculating Section 6621 overpayments and underpayments. *See* I.R.C. §6622.

The plaintiff seeks prejudgment interest compounded quarterly. The court agrees that compounding interest is better able to make the plaintiff whole with respect to his back pay as it takes into account the lost time value of money. *See Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp.2d 128, 137 (D.N.J. 2007) (explaining the justification for compounding interest under Section 1961 in patent infringement cases as a need to include within the damages the lost use of money over time—its time value). However, the court

60

finds the better method to be interest compounded annually, not quarterly. This strikes some balance between taking no account of the time value of money and penalizing the defendant for the length of a case, which will often take several years to resolve.

Next, the court must determine the length of time, or the start and end date, of calculating the interest. The plaintiff wishes to start the interest calculation on the full amount of back pay from the date of the suspension, June 7, 2012. The court will begin calculating prejudgment interest on January 23, 2013, the end date of the suspension and the date on which the full amount of back pay accrued. *Compare with Frazier,* 814 F. Supp. at 14. Some convenience must be made for the court's calculation, given that the parties have failed to provide accurate calculations of their own. *See Gelof v. Papineau*, 829 F.2d 452, 456 (3d Cir. 1987). Interest will end on April 16, 2016, the date of the judgment.

The court cannot begin calculating prejudgment interest on the suspension as the plaintiff requests because doing this would add interest to daily amounts of back pay that had not accrued. This amount is then compounded prematurely, resulting in additional sums awarded to the plaintiff that would not be justified. Said another way, if the defendant did not owe the

plaintiff the full amount of back pay on June 7, 2012, it would be error to assume that amount should be charged interest starting on that day. Further complicating the matter, there is a gap in the days between June 7, 2012 and January 23, 2013 (the end of the suspension) where the plaintiff was not owed any daily sum. Thus, the calculation is not as simple as adding the daily rate and charging interest from June 7, 2012 to January 23, 2013 and continuing the calculation from there. For the sake of simplicity, the court will begin calculating interest on January 23, 2013, the end date of the suspension and the date on which the full amount of back pay accrued.

Lastly, the court will calculate the prejudgment interest on the gross amount of back pay minus the medical premium due to the defendant. Calculating the prejudgment interest on the gross amount minus the premium due will do a better job of making the plaintiff whole, since the taxes on the back pay are not actually due until receipt of the money, not accrual of the money. As explained previously, the prejudgment interest will be taxable as income. I.R.C. §61(a)(4); *Francisco v. United States*, 267 F.3d 303, 315–16 (3d Cir. 2001). Unlike the back pay, however, the plaintiff will be responsible for reporting this sum, not the defendant.[8] The gross amount of the back pay

---

[8] Interest on back pay awards is not deemed to be wages. Rev. Rul. 80-364, 1980-2 C.B. 294.

minus the medical premium amounts to $34,158.40. Calculating interest from January 23, 2013 to April 16, 2016 using the overpayment rates provided by Section 6621(a)(1), compounded annually, amounts to $3,443.61 in pre-tax prejudgment interest.

### Prejudgment Interest Calculation

|  | **Amount** | **Interest Rate** | **Total Interest** |
|---|---|---|---|
| 1/23/14–1/22/14 | $34,158.40 | 3% | $1,024.75 |
| 1/23/14–1/22/15 | $35,183.15 | 3% | $1,055.49 |
| 1/23/15–1/22/16 | $36,238.64 | 3% | $1,087.16 |
| 1/23/16–3/31/16[9] | $37,325.80 | .57%[10] | $212.76 |
| 4/1/16–4/16/16[11] | $37,325.80 | .17%[9] | $63.45 |
| **TOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .** | | | **$3,443.61** |

---

[9] Totaling 69 days including end date.

[10] Interest Calculation: .57% (.0057 rounded) = 3% (.03) divided by 366 days ( 2016 leap year) multiplied by 69 days. *See* Treas. Reg. §301.6622-1(a) (1983) (providing the method of computing daily interest).

[11] Totaling 16 days including end date.

[9] Interest Calculation: .17% (.0017 rounded) = 4% (.04) divided by 366 days ( 2016 leap year) multiplied by 16 days. *See* §301.6622-1(a).

## B. Negative Tax Implication

As a final matter, the plaintiff argues that he will be subject to a ten percent increased tax burden resulting from a lump sum back pay award. Relying on *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 441 (3d Cir. 2009), the plaintiff argues that he is entitled to an additional monetary award to "offset" this negative tax consequence. Currently, he requests a total of $9,640.77 as compensation for the increased tax burden. The defendant opposes any offset to the plaintiff for alleged negative tax consequences, arguing that the plaintiff has not cited any authority allowing the plaintiff to receive his award as a lump sum award.[10] The court finds that the plaintiff would normally be entitled to reimbursement for any negative tax implications but that he has not sustained his burden with respect to the amount requested.

In *Eshelman*, the Third Circuit held that a district court may grant a prevailing employee an additional sum of money to compensate for the

---

[10] This argument is without merit. Once a plaintiff obtains a monetary judgment, the full amount is owed to him or her and the defendant has failed to show that the opposite is true in this circuit. The plaintiff need not cite case law for the proposition that a defendant owes the full amount on a judgment once one is obtained. A defendant may agree with the plaintiff on the methods, means, or timing of satisfying the judgment, but the defendant has failed to show that the plaintiff is somehow required to seek satisfaction of the judgment using a piecemeal approach because of the plaintiff's status as an employee or former employee.

increased tax burden resulting from a lump sum back pay award. 554 F.3d at 441. The Third Circuit likened an award offsetting negative tax consequences to an award of prejudgment interest on back pay, stating that both represent "a recognition that the harm to a prevailing employee's pecuniary interest may be broader in scope than just a loss of back pay." *Id.* at 442. Thus, "either or both types of equitable relief may be necessary to achieve complete restoration of the prevailing employee's economic status quo." *Id.*; *see also Marcus*, 458 F. App'x at 214. "Accordingly, district courts, 'should grant [additional tax] relief in light of the circumstances peculiar to the case.'" *Ellis*, 2009 WL 10641983, at *20 (quoting *Eshelman*, 554 F.3d at 443).

Although the plaintiff may be entitled to an additional amount of money to offset the negative consequences of a lump sum back pay award, the plaintiff must demonstrate the amount of money he is entitled to. There is no presumption in favor of an adjustment for negative tax consequences. *Eshelman*, 554 F.3d at 443. The prevailing employee bears the burden of demonstrating their entitlement to such an award. *Ellis*, 2009 WL 10641983, at *20. Accordingly, the court may deny an award compensating for an increased tax burden where the plaintiff has not submitted sufficient evidence

of the negative tax implication and the amount is speculative. *E.g., Supinski, 2012 WL 2905458*, at \*6.

Here, the plaintiff's original request for an award due to an increased tax burden, (Doc. 80, at 2), was calculated by the plaintiff himself, as he explained at the August 22, 2016 hearing. After the hearing, the court advised the plaintiff that he needed to submit more than his own personal calculations to obtain an award. On September 2, 2016, the plaintiff submitted a letter from Mr. Lubash who is a managing partner of a tax firm. (Doc. 104, at 2). Mr. Lubash's letter indicated that he reviewed the plaintiff's calculations and confirmed that those calculations were correct. However, Mr. Lobash also  indicated that any changes to the "base data" provided to him would alter the tax paid for the year. Mr. Lobash did not indicate in his letter what base tax was provided to him in reaching his opinion and the court can only assume that the base data included the calculations submitted with the letter itself. (*See id.* at 3–4).

Like the plaintiff's original request, the data provided to Mr. Lobash appears to be a simple calculation computed by the plaintiff himself and/or his counsel. This is not sufficient and Mr. Lobash's subsequent approval of the calculation is not sufficient to verify the final amount of the tax implication. As an initial matter, some of the data is incorrect. The prejudgment and

66

postjudgment interest included for purposes of the projected tax amount is calculated using a six percent rate, compounded quarterly. As explained above, the prejudgment interest is calculated according to the overpayment rates set forth in Section 6621. The postjudgment rates are set forth in Title 28, Section 1961 of the United States Code—the postjudgment interest statute. *See also* *Schlier*, 2009 WL 5182164, at *3. Thus, the plaintiff's calculations are wrong with respect to prejudgment and postjudgment interest. In addition, the taxes due are calculated using the 2016 projected tax rate. It is now 2017. Thus, the tax brackets provided in the 2016 table are now inapplicable due to inflation.

In addition to incorrect data, the plaintiff did not provide verification of the "[p]rior to award" income used in his calculation. (*See* Doc. 104, at 4). The plaintiff's calculation lists the amount at $85,600 without any supporting W-2's or other income verification forms, nor was there any indication in Mr. Lobash's letter that he reviewed the plaintiff's income documentation. There is also no indication of what, if any, tax deductions the plaintiff might take when filing his returns. In light of this, the court finds that the plaintiff's pre-award projected tax rate is speculative.

Adding to this, the plaintiff's calculation does not appear to deduct for any tax benefits received in the years of his suspension. These benefits must be taken into account. Presumably, if the plaintiff's suspension resulted in lower income during the time of the suspension, he would pay less tax during those years. The plaintiff's calculations do not account for any such benefit. If the court awards the requested amount without considering the presumed benefits obtained during the years of the suspension the award will go beyond bringing the plaintiff to the status quo and do more than make him whole. This result would be inappropriate.

Mr. Lobash's letter is also not a sufficient rubber stamp on the plaintiff's calculations as it lacks any detail and appears speculative in stating that "any changes before the end of the tax year, [sic] to the base data can alter the actual tax paid for the year." (*Id*. at 2). Mr. Lobash's letter is far from the affidavit of the economic expert provided by the plaintiff in *Eshelman*, an expert who calculated the amount of tax-effect damages based upon the back pay award, the applicable tax rates, and reviewed the plaintiff's income tax returns for the relevant time period. 554 F.3d at 442. Mr. Lobash's letter does not indicate that Mr. Lobash personally calculated the tax effect of the award and, instead, simply relies on numbers provided in a calculation submitted to him.

As such, Mr. Lobash's letter does not save the plaintiff from the defects in his calculation. The plaintiff was warned at the hearing that he needed to provide sufficient support to sustain a negative tax implication award. Having failed to do so, his request for an additional sum to compensate him for an increased tax burden is denied.

## IV.   CONCLUSION

For the foregoing reasons, the plaintiff's motion for attorneys' fees and costs, (Doc. 82), as supplemented by the plaintiff's letter requests, (Docs. 105, 106, 107, 108), is **GRANTED IN PART**. The plaintiff will be awarded attorneys' fees in the amount of $78,590.25, with $11,625.00 awarded to compensate Attorney Katsock's work in the Section 1983 litigation and $66,965.25 awarded to compensate Attorney Katsock's work in the Section 1983 litigation. The plaintiff will be awarded costs in the amount $876.78 for all well-supported expenses submitted to the court that related to the litigation.

Further, after review of the parties submissions regarding damages, (Docs. 80, 81, 104), the plaintiff will be awarded back pay in the after-tax amount of $20,221.48. The plaintiff will also be awarded $3,443.61 for pre-tax, prejudgment interest on the back pay award. Any subsequent, postjudgment

interest will be calculated according to Title 28, Section 1961 of the United States Code. The plaintiff has not sustained his burden with respect to a negative tax implication award and no such sum will be awarded. A separate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 20, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1519-05.wpd